

**FILED**

Jul 07 2015, 10:02 am

*Kevin Smith*

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

B. Joseph Davis
Law Office of B. Joseph Davis, PC
Muncie, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Brian Reitz
Deputy Attorney General
Indianapolis, Indiana

IN THE
# COURT OF APPEALS OF INDIANA

Christopher Wertz,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff,*

July 7, 2015

Court of Appeals Cause No.
48A04-1409-CR-427

Appeal from the Madison Circuit
Court
Honorable Dennis Carroll, Judge
Cause No. 48C06-1112-FC-2380

**Robb, Judge.**

# Case Summary and Issue

[1]   Christopher Wertz brings this interlocutory appeal, challenging the trial court's denial of his motion to suppress. He presents one issue, which is a matter of first impression: whether the warrantless search of his personal Garmin Global Positioning System ("GPS") device violated the Fourth Amendment to the

United States Constitution.[1]  We conclude Wertz's GPS device is not a "container" under the automobile exception and that he has a reasonable expectation of privacy in the device and its contents.  Therefore, the warrantless search of the GPS device violated the Fourth Amendment.  We reverse and remand.

# Facts and Procedural History[2]

On September 9, 2011, Wertz was driving in Madison County when he lost control of his vehicle and struck a utility pole.  Wertz was severely injured, and his passenger, Megan Solinski, died at the scene of the accident as a result of injuries sustained.  Law enforcement officers found a Garmin GPS device, which belonged to Wertz, near the wrecked vehicle.

Approximately one week after the accident, law enforcement officers visited Wertz at the hospital and obtained written consent to examine the content saved in the GPS unit.  However, the GPS required a pin code to access the device, which Captain Rick Garrett obtained by contacting the company that produces the GPS device, Garmin International.  Once that passcode was

---

[1]  Wertz's brief also mentions Article 1, Section 11 of the Indiana Constitution.  However, he provides no independent analysis on this point.  Therefore, we consider his state constitutional argument forfeited.  *See Fair v. State*, 627 N.E.2d 427, 430 n.1 (Ind. 1993) (stating failure to provide separate authority and argument that a search violated the Indiana Constitution forfeited that issue on appeal).

[2]  We heard oral argument in this case on April 14, 2015 at the Hammond Academy of Science and Technology (HAST). We commend counsel for their advocacy and thank the faculty, staff, and students at HAST for their participation.

retrieved, an officer was able to collect information from the GPS device, including the route Wertz traveled and his speed at the time of the accident.

[4] The State charged Wertz with reckless homicide, a Class C felony, and Wertz filed a motion to suppress evidence obtained through the warrantless search of his GPS device. The trial court found that Wertz's consent to search the device was invalid because he was on pain medication at the time the officers received his consent; however, the trial court held that Wertz had no reasonable expectation of privacy in the GPS device and thus the information collected from it was admissible.

[5] A jury trial was held in March 2014 but ended in a mistrial, and a second jury trial was scheduled to take place on July 29, 2014. In the interim, the United States Supreme Court decided *Riley v. California*, 134 S.Ct. 2473 (2014), which held that a warrant was required to search digital information on an arrestee's cell phone. Wertz reacted by requesting that the trial court reconsider his motion to suppress in light of the Supreme Court's recent decision in *Riley*. The trial court revisited the matter but ultimately issued an order on August 4, 2014, denying Wertz's renewed motion to suppress.

[6] On August 22, 2014, Wertz filed a motion to certify the trial court's order for interlocutory appeal, which the trial court granted on August 26, 2014. On September 11, 2014, Wertz requested that the Court of Appeals accept jurisdiction of the appeal, and we accepted jurisdiction on October 9, 2014. On appeal, the only issue is whether the search of Wertz's GPS device violated a

reasonable expectation of privacy. The State does not challenge the trial court's determination that Wertz did not provide valid consent for the search.

# Discussion and Decision

## I. Standard of Review

When reviewing a trial court's denial of a defendant's motion to suppress, we view conflicting factual evidence in the light most favorable to the ruling but we will also consider substantial and uncontested evidence favorable to the defendant. *Robinson v. State*, 5 N.E.3d 362, 365 (Ind. 2014). That said, the constitutionality of a search or seizure is a question of law, which we review de novo. *Id.*

The Fourth Amendment to the United States Constitution protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures . . . ." "[T]he ultimate touchstone of the Fourth Amendment is 'reasonableness[.]'" *Brigham City v. Stuart*, 547 U.S. 398, 403 (2006). We approach cases involving warrantless searches with the basic understanding that "searches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." *Arizona v. Gant*, 556 U.S. 332, 338 (2009) (quoting *Katz v. United States*, 389 U.S. 347, 357 (1967) (footnote omitted)). Where there is no clear practice concerning the constitutionality of a search, the reasonableness of the search is judged by balancing "the degree to which it intrudes upon an

individual's privacy and . . . the degree to which it is needed for the promotion of legitimate governmental interests." *Wyoming v. Houghton*, 526 U.S. 295, 299-300 (1999).

## II.   Wertz's GPS Device

The Garmin GPS device searched by the State was personally owned by Wertz and kept in his vehicle. The device includes pre-loaded street maps and the ability to store hundreds of waypoints and locations. The device is also compatible with microSD cards, which are routinely able to store 16 to 128 gigabytes (GB) of data. In addition, Wertz's GPS device is designed to automatically record and store information such as location, past routes traveled, and speed. It is because of that automated storage that law enforcement was able to discover Wertz's route of travel and rate of speed on the day of his accident.

## III.   Fourth Amendment

Wertz argues that the warrantless search of his GPS unit violated his right to be free from unreasonable searches. He claims that his GPS device is similar to a cell phone that cannot be searched without a warrant and that the location data stored in the GPS is private information. To support his arguments, Wertz relies heavily on two recent United States Supreme Court decisions: *Riley v. California*, 134 S.Ct. 2473 (2014) and *United States v. Jones*, 132 S.Ct. 945 (2012). The State, for its part, argues that a GPS device is less private than a cell phone, the information stored in the GPS device is entitled to less protection because it

is information Wertz exposed to the public, and the search was allowable under the automobile exception to the warrant requirement.

## A.  Automobile Exception to the Warrant Requirement

Warrantless searches are presumed unreasonable and may be excused only upon a showing of circumstances that yield a diminished expectation of privacy.  To justify the search in this case, the State hangs it hat on the warrant requirement's "automobile exception."

The automobile exception has deep roots in Fourth Amendment jurisprudence and essentially provides that a vehicle—and its contents—may be searched without a warrant so long as law enforcement has probable cause to believe evidence of a crime may be found inside.  *See Maryland v. Dyson*, 527 U.S. 465, 466-67 (1999) (per curiam).  Principles underlying the automobile exception include a vehicle's mobility and subjection to government regulation, *California v. Carney*, 471 U.S. 386, 390-93 (1985), and the inability to avoid public scrutiny due to its exposure to "public thoroughfares where both its occupants and its contents are in plain view," *South Dakota v. Opperman*, 428 U.S. 364, 368 (1976) (citation omitted).

The automobile exception allows law enforcement to search not only the vehicle itself but also any containers inside it that may contain evidence.  *California v. Acevedo*, 500 U.S. 565, 580 (1991).  The authority to search containers found in a vehicle extends to *locked* containers.  *See id.* at 577-79 (abrogating *United States v. Chadwick*, 433 U.S. 1 (1977)).  The State likens the

GPS device in this case to a locked container and directs us to lower court decisions comparing computers and cell phones to locked containers. *See* Brief of Appellee at 21-22. Indiana does not have a case directly on point, but lower courts in other jurisdictions are split on the issue of whether a computer or cell phone may be treated as a container and subjected to a warrantless search under the automobile exception. *Compare United States v. Zaavedra*, No. 12-CR-156-GFK, 2013 WL 6438981, at *3 (N.D. Okla. Dec. 9, 2013) (holding warrantless search of a cell phone was permissible under the automobile exception),[3] *and United States v. Garcia-Aleman*, No. 1:10-CR-29, 2010 WL 2635071, at *12 (E.D. Tex. June 9, 2010) (same), *with United States v. Mayo*, No. 2:13-CR-48, 2013 WL 5945802, at *9-14 (D.Vt. Nov. 6, 2013) (holding that cell phones are comparable to computers and that if seized under the automobile exception, a warrant is required to justify the search of a cell phone); *Chung v. State*, No. 10-13-307-CR, 2014 WL 5408439, at *6 (Tex. App. Oct. 23, 2014) (citing *Riley v. California*, 134 S.Ct. 2473 (2014)) (same). It should be noted that the State's persuasive authority comparing computers and cellphones to containers were all decided *before* the Supreme Court's decision in *Riley v. California*, *infra*, which we believe is instructive.

[14] In *Riley v. California*, the United States Supreme Court held that a warrant is generally required to search an arrestee's cell phone, despite a recognized

---

[3] The court's opinion in *Zaavedra* contains a string cite of cases which have held that the contents of a cell phone may be searched under the automobile exception. *See id.* at *3. Those cases are all cited in the State's brief. *See* Br. of Appellee at 22.

exception for searches incident to a lawful arrest. 134 S.Ct. at 2485. The Court reached its holding for two reasons: (1) concerns justifying a search incident to arrest are not applicable to digital data; and (2) digital data implicates substantial privacy concerns far beyond those implicated by the search of physical items ordinarily found on an arrestee's person. *Id.* at 2484-85. It is the latter rationale that is relevant to this case.

[15] The Court said that "when privacy-related concerns are weighty enough a search may require a warrant, notwithstanding the diminished expectations of privacy of the arrestee." *Id.* at 2488 (quoting *Maryland v. King*, 133 S.Ct. 1958, 1979 (2013)) (quotation marks omitted). Such concerns were found weighty enough with respect to cell phones, which the Court said hold "the privacies of life." *Id.* at 2494-95 (citation omitted). As the Court explained, cell phones are "minicomputers" that may easily be called "cameras, video players, rolodexes, calendars, tape recorders, libraries, diaries, albums, televisions, maps, or newspapers." *Id.* at 2489. The Court reasoned that cell phones are quantitatively different from physical objects ordinarily found in a search incident to arrest because of their capacity to store enormous amounts of information, and that cell phones are qualitatively different from physical objects in that they are likely to contain private information that could not otherwise be gleaned from a search of one's person.[4] *Id.* at 2489-91. Finally,

---

[4] Examples of private information that could be found on a cell phone included pictures, videos, address books, call logs, text messages, location data, Internet search history, and mobile application software (i.e. "apps"). *See Riley*, 134 S.Ct. at 2489.

the Court rebuked the government's assertion that a cell phone could be analogized to a "container" that could be searched incident to arrest. *Id.* at 2489, 2491 (distinguishing cell phones from a cigarette package searched in *United States v. Robinson*, 414 U.S. 218 (1973)).

[16] Of particular relevance to this case is the Court's reference to "location information" when discussing one's privacy interest in information contained in a cell phone. The Court said: "Data on a cell phone can also reveal where a person has been. Historic location information is a standard feature on many smart phones and can reconstruct someone's specific movements down to the minute, not only around town but also within a particular building." *Id.* at 2490 (citing *United States v. Jones*, 132 S.Ct. 945, 955 (2012) (Sotomayor, J., concurring)).

[17] In our view, the GPS unit in this case is akin to a computer or cell phone. The device stores large amounts of information that could not possibly be stored in an ordinary physical container. For that reason, an electronic storage device cannot be treated as a container. Moreover, the location data it does store has been identified by the Supreme Court as private information. Just as the Supreme Court believed that treating a cell phone as a container was "a bit strained," *id.* at 2491, we believe that treating the GPS device as a container under the automobile exception is inappropriate.

[18] The State maintains that Wertz's GPS device is not deserving of the same level of protection as a cell phone, because a GPS device does not contain the same

amount of personal information. The GPS unit does not hold pictures, Internet history, text messages, a calendar, or several of the other features that a smart phone does. No one will dispute that society considers a cell phone to be more private than the GPS device in this case. But that does not mean that electronic devices other than cell phones are not entitled to Fourth Amendment protections. It remains true that devices like Wertz's GPS have an enormous storage capacity, and they store information that most people consider to be private. Any differences between the contents of a cell phone and a GPS device do not support treating the GPS device as a container.

[19] The State also asserts that "*Riley* does not control because it says nothing of the automobile exception." Br. of Appellee at 23. The State argues that unlike the search-incident-to-arrest exception, which is borne out of concerns for officer safety and preservation of evidence, the automobile exception is based on a diminished expectation of privacy in the vehicle itself and applies "when it is reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle." *Id.* at 23 (quoting *Gant*, 556 U.S. at 343).

[20] The State's proposed distinction would require us to conclude that a *cell phone* found next to a driver in the passenger seat of his vehicle could be searched without a warrant, regardless of the Supreme Court's decision in *Riley*. But such an outcome is unthinkable if the Court meant what it said in *Riley*. Although the State is correct that *Riley* dealt only with the search-incident-to-arrest exception, *Riley*'s discussion of Fourth Amendment protections afforded to electronic devices that store private information transcends the search-

incident-to-arrest exception. The analysis in *Riley* easily transfers to other circumstances where an exception to the warrant requirement would otherwise exist, including the automobile context. *See Chung*, 2014 WL 5408439, at *5-6 (Tex. App. Feb. 11, 2015) (relying on *Riley* and holding that an officer's warrantless search of a cell phone was not justified under the automobile exception to the warrant requirement); *United States v. Kim*, Crim. Action No. 13-0100 (ABJ), 2015 WL 2148070, at *18-22 (D.D.C. May 8, 2015) (applying *Riley* to the search of a computer under the border exception to the warrant requirement).

[21] In sum, we hold that Wertz's GPS device is similar in nature to a computer or cell phone, and that such a device cannot be treated as a "container" that may be searched pursuant to the automobile exception to the warrant requirement.

## B. Privacy Expectations in Location Data

[22] In addition to arguing that Wertz's GPS unit is effectively a locked container accessible under the automobile exception, the State also contends that the GPS device and the *information* contained therein is afforded a lesser degree of privacy.

[23] In *United States v. Knotts*, the Supreme Court held that a defendant's Fourth Amendment rights were not violated when law enforcement monitored his whereabouts with the use of a radio transmitter that was placed in the defendant's vehicle. 460 U.S. 276, 285 (1983). In that case, law enforcement placed a transmitter in a container purchased by a co-defendant, and the

container was placed in the co-defendant's car. Police followed the co-defendant, maintaining contact using both visual surveillance and a signal from the transmitter. The container was transferred to a second co-defendant's vehicle, and law enforcement pursued the second co-defendant until he began driving evasively, at which point officers were unable to maintain visual surveillance and also lost the signal from the transmitter. With the aid of a monitoring device in a police helicopter, law enforcement was able to relocate the transmitter signal approximately one hour later, and they were able to find the transmitter, which came to rest at Knotts's residence.[5] Police executed a search warrant on the residence and discovered a methamphetamine laboratory. At trial, Knotts moved to suppress evidence based on the warrantless monitoring of the transmitter.

[24] The Supreme Court held in *Knotts* that police monitoring of the transmitter—and thus, by extension, the whereabouts of the defendants—did not invade a legitimate expectation of privacy. *Id.* at 285. After referencing the warrant requirement's automobile exception, the Court reasoned that "[a] person travelling in an automobile on public thoroughfares has no reasonable expectation of privacy in his movements from one place to another." *Id.* at 281. According to the Court, the driver "voluntarily conveyed to anyone who wanted to look the fact that he was travelling over particular roads in a particular direction, the fact of whatever stops he made, and the fact of his final

---

[5] In all, the police tracked the transmitter from Minneapolis, Minnesota to Shell Lake, Wisconsin.

destination . . . ." *Id.* at 281-82. The Court went on to say that visual surveillance from public places would have sufficed to gather all the information that was learned, and the use of a radio transmitter did not alter the analysis. *Id.* at 282. The Court left for another day Knotts's concern that the holding would allow for twenty-four-hour surveillance of any citizen without the need for a warrant, stating that "if such dragnet type law enforcement practices . . . should eventually occur, there will be time enough then to determine whether different constitutional principles may be applicable." *Id.* at 283-84.

[25] The State argues that the information obtained from Wertz's GPS device—his location, route of travel, and speed—is of the same character as the information obtained by law enforcement in *Knotts*, and the fact that the information was gathered from Wertz's GPS unit rather than visual surveillance has no constitutional significance. The State reasons that if Wertz has no reasonable expectation of privacy in the information obtained (i.e. his location and movements), then the search did not violate his Fourth Amendment rights. [6]

[26] Contrary to the State's position, *Knotts* is not the Supreme Court's last word on the issue before us. In *United States v. Jones*, the Supreme Court held that the

---

[6] The State's argument is reminiscent of a comment made by Justice Scalia in *United States v. Jones*, in which he mused about a possible argument that a search is not unconstitutional so long as it produces only public information. *See* 132 S.Ct. 945, 952 (2012) ("*Knotts* would be relevant, perhaps, if the Government were making the argument that what would otherwise be an unconstitutional search is not such where it produces only public information. The Government does not make that argument, and we know of no case that would support it.").

installation of a GPS tracking device on a vehicle and the use of that device to monitor the vehicle's movements constituted a "search" under the meaning of the Fourth Amendment. 132 S.Ct. 945, 948 (2012). The majority based its holding on the fact that a physical trespass—*installation* of the GPS device—for the purpose of obtaining information is a "search" under the Fourth Amendment. *Id.* at 949-54. Of course, there was no physical trespass in Wertz's case; however, two concurrences in *Jones*, which focus their analysis on reasonable expectations of privacy, are germane.

[27] Justice Alito wrote a concurrence in the judgment joined by three Justices, in which he argued that law enforcement's long-term monitoring of Jones's vehicle violated reasonable expectations of privacy. *Id.* at 964 (Alito, J., concurring). He explained that constant monitoring of Jones's location for a four-week period involved a degree of intrusion that a reasonable person would not anticipate:

> [T]he use of longer term GPS monitoring in investigations of most offenses impinges on expectations of privacy. For such offenses, society's expectation has been that law enforcement agents and others would not—and indeed, in the main, simply could not—secretly monitor and catalogue every single movement of an individual's car for a very long period.

*Id.* That said, Justice Alito did not believe that all monitoring of a person's location would constitute a search under the Fourth Amendment, stating "relatively short-term monitoring of a person's movements on public streets accords with expectations of privacy that our society has recognized as reasonable." *Id.* (citing *Knotts*, 460 U.S. at 281-82).

[28] Justice Sotomayor also filed a concurrence in which she agreed with the majority that a physical intrusion was sufficient to constitute a search under the Fourth Amendment, providing the majority with the necessary fifth vote. Nevertheless, the bulk of Justice Sotomayor's concurrence was spent discussing her concerns with GPS monitoring under the rubric of reasonable expectations of privacy. She agreed with Justice Alito that "at the very least, longer term GPS monitoring in investigations of most offenses impinges on expectations of privacy." *Id.* at 955 (Sotomayor, J., concurring) (quotation marks omitted).

[29] Justice Sotomayor went on to say that "[i]n cases involving even short-term monitoring, some unique attributes of GPS surveillance relevant to the *Katz* analysis will require particular attention. GPS monitoring generates a precise, comprehensive record of a person's public movements that reflects a wealth of detail about her familial, political, professional, religious, and sexual associations." *Id.* at 955 (Sotomayor, J., concurring).[7] It is also important to note that Justice Sotomayor's concerns were not limited to government-installed GPS trackers like the one in *Jones*, but also with "factory- or *owner-installed vehicle tracking devices* or GPS-enabled smartphones" from which the government could obtain location information. *Id.* at 955 (emphasis added).

[30] The gathering of detailed historical location data from a personal GPS device is the functional equivalent of the long-term GPS monitoring in *Jones* or the

---

[7] This passage was cited with approval by the majority in *Riley*. *See* 134 S.Ct. at 2490.

twenty-four-hour dragnet-type surveillance that the Court alluded to in *Knotts*. It provides law enforcement with a simple method of reconstructing all of a person's public movements over several days, months, or possibly even years. Although a person can expect to be seen by *someone* when he leaves his home and drives to a given destination, it does not follow that he should expect the *government* to know his whereabouts *all the time*. We are confident in saying that there is a reasonable expectation of privacy in historical location data, whether it be stored in a cell phone, a GPS unit, or in "the cloud."[8]

[31] The State makes three attempts to distinguish or otherwise sidestep the impact of *Jones*. First, the State argues that *Jones* does not bind this court to hold the search in this case is unconstitutional, because the majority in *Jones* rested its decision on a physical intrusion, not privacy expectations. It is true that the facts of *Jones* are different from those here and that it was technically decided by emphasizing a physical trespass. Still, we cannot turn a blind eye to the obvious significance that the *Jones* concurrences have in relation to the issues presented here. Between the two concurrences by Justice Alito and Justice Sotomayor, there are *at least* five Supreme Court Justices who believe that long-term monitoring of a citizen's location violates reasonable expectations of privacy, despite the fact that the citizen's location was exposed to the public.

---

[8] Cloud storage is a method of storing electronic data on remote servers—in addition to or in lieu of the device itself. Data stored in the cloud can be accessed by an electronic device connected to the Internet.

[32]     Second, the State contends the *Jones* concurrences are distinguishable from the facts of this case because there was no "long-term monitoring" of Wertz's location. As the State explains, "no monitoring, or tracking of movements, occurred here at all; instead, all law enforcement did was investigate after-the-fact where Wertz had been." Br. of Appellee at 13.

[33]     The Fourth Amendment forbids real-time, long-term monitoring of a citizen's location. *See supra*, ¶¶ 26-31 (discussing *Jones* concurrences). There is no logical basis for allowing the government to obtain the same information without a warrant by inspecting a citizen's location information after-the-fact. In *Riley*, the Court's references to location data were specific to "[h]istoric location information" stored on a cell phone, which could be used to "reconstruct someone's specific movements down to the minute." 134 S.Ct. at 2490. The Court regarded that information as private, understanding that the information would be obtained after-the-fact rather than through real-time tracking by law enforcement. The expectation of privacy in one's whereabouts is not only due to society's impulse to cringe at the idea of being followed day-and-night; the personal nature of the information itself gives rise to an expectation of privacy. As one court has aptly noted,

> [d]isclosed in [GPS] data . . . will be trips the indisputably private nature of which takes little imagination to conjure: trips to the psychiatrist, the plastic surgeon, the abortion clinic, the AIDS treatment center, the strip club, the criminal defense attorney, the by-the-hour motel, the union meeting, the mosque, synagogue or church, the gay bar and on and on.

*People v. Weaver*, 909 N.E.2d 1195, 1199 (N.Y. 2009).

[34] Finally, we are not persuaded by the State's argument that the search was permissible because law enforcement only sought information about where Wertz was located on a particular evening. Differences between real-time monitoring and the inspection of historical location data make the State's position untenable. The police can physically follow a suspect and maintain visual contact for an entire day, and there is no doubt that surveillance remains permissible under the Fourth Amendment—largely because the search and the information that may be obtained is limited. *See Knotts*, 460 U.S. at 281-85. By contrast, examination of a suspect's historical location data necessarily gives the police access not only to a specific date, but to information concerning every day. When police accessed Wertz's GPS unit, all of his data was available for inspection, not just the information from the specific timeframe for which the police were looking. Allowing the search of historical location data because the target of the search is a timeframe police could have observed would be like allowing warrantless entry into a residence to seize a piece of contraband if police could have observed it through an open window. Sure, the homeowner does not have a reasonable expectation of privacy in contraband exposed to the public through the window, but reasonable expectations of privacy in the house and its contents still require law enforcement to acquire a warrant before entering and seizing the contraband. *See Justice v. State*, 765 N.E.2d 161, 164-65 (Ind. Ct. App. 2002) (discussing the open view doctrine). Similarly, the mere fact that an officer *could* have observed a citizen's whereabouts at a given time does not mean it is permissible to conduct a warrantless search of the citizen's location data.

[35] We hold that there is a reasonable expectation of privacy in detailed historical location data from a personal GPS device. Absent exigent circumstances, law enforcement must obtain a search warrant in order to access such information.

# IV.  Applicability of the Exclusionary Rule

[36] Finally, the State argues that even if a Fourth Amendment violation occurred, the exclusionary rule should not be applied because the officers reasonably believed that their search did not require a warrant.

[37] The exclusionary rule prevents the prosecution from introducing evidence obtained in violation of a defendant's Fourth Amendment rights. It is "a judicially created remedy designed to safeguard Fourth Amendment rights generally through its deterrent effect . . . ." *United States v. Leon*, 468 U.S. 897, 906 (1984) (citation omitted). The purpose of the exclusionary rule is to "deter future Fourth Amendment violations." *Davis v. United States*, 131 S.Ct. 2419, 2426 (2011). "[E]xclusion of evidence does not automatically follow from the fact that a Fourth Amendment violation occurred. The remedy is subject to exceptions and applies only where its purpose is effectively advanced." *Id.* at 2431 (citations and quotation marks omitted). Accordingly, "when the police conduct a search in objectively reasonable reliance on binding appellate precedent, the exclusionary rule does not apply." *Id.* at 2434.

[38] The State argues that it was reasonable for police, relying on Supreme Court precedent such as *Knotts* and *Acevedo*, to believe that a warrant was not

necessary for them to search Wertz's GPS unit.[9]  Therefore, the exclusionary rule would not serve its purpose of deterrence in this case and should not be applied.  We disagree.

[39]   We are not persuaded that a law enforcement officer could rely on binding precedent for the warrantless search of Wertz's GPS device.  As the Supreme Court noted in *Riley*, a "container" had been previously described as "any object capable of holding another object."  134 S.Ct. at 2491 (quoting *New York v. Belton*, 453 U.S. 454, 460 n.4 (1981)).  An electronic storage device does not fall under that definition.  Additionally, general reliance on the automobile exception is not sufficient, because not *all* things located in a vehicle are necessarily subject to a warrantless search under the automobile exception.  *See, e.g., United States v. Di Re*, 332 U.S. 581, 587 (1948) (holding that a person, by mere presence in a suspected vehicle, does not lose immunities from search of his person to which he would otherwise be entitled).  We read *Riley* only as clarifying that electronic storage devices are not properly treated as containers, not as a new rule of law or as overruling any binding precedent previously allowing for the warrantless search of an electronic device under the automobile exception to the warrant requirement.

[40]   Further, although *Knotts* may be relevant to the extent its legal reasoning could be transferred to this case, the type of search conducted in that case is clearly

---

[9] At oral argument, the State proclaimed there has been a "sea-change" in Fourth Amendment jurisprudence regarding the search of electronic devices and monitoring of citizens' public movements.

distinguishable from the one that occurred here. Simply put, there exists no binding precedent allowing for a warrantless search of an electronic device storing historical location data. In the absence of such authority, the general rule is that a warrant is required. *See Gant*, 556 U.S. at 338. In sum, we conclude that application of the exclusionary rule is appropriate in this case.[10]

## Conclusion

We conclude Wertz's GPS device cannot be treated as a "container" under the automobile exception. We further conclude that he has a reasonable expectation of privacy in the device and in the historical location data that the device stores. Therefore, the warrantless search of the GPS device violated the Fourth Amendment. We reverse and remand.

Reversed and remanded.

Riley, J., and Bailey, J., concur.

---

[10] We note that the State does not argue that the exclusionary rule should not be applied due to a good faith attempt to obtain consent from Wertz, and the record is not sufficient to facilitate review of such a claim even if the State made the argument.