

**FILED**

Dec 07 2015, 9:10 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANT

Kimberly A. Jackson
David R. Hennessy
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Chandra K. Hein
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Phillip Whitley,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

December 7, 2015

Court of Appeals Case No.
49A02-1501-CR-50

Appeal from the Marion Superior
Court

The Honorable Steven R.
Eichholtz, Judge

Trial Court Cause No.
49G20-1402-FA-8402

**Mathias, Judge.**

[1] Phillip Whitley ("Whitley") was charged in Marion Superior Court with Class A felony dealing in methamphetamine, Class C felony possession of methamphetamine, Class D felony possession of a controlled substance, and Class A misdemeanor driving while suspended. The evidence supporting the charges was discovered during an inventory search of the vehicle Whitley was

driving. Whitley filed a motion to suppress this evidence, arguing the warrantless search violated his constitutional rights under the Fourth Amendment and Article 1, Section 11. The trial court denied Whitley's motion to suppress, certified its decision, and our court has accepted jurisdiction of this interlocutory appeal.

[2] We affirm.

## Facts and Procedural History

[3] At approximately 12:35 a.m. on February 20, 2014, Indianapolis Metropolitan Police Officer ("IMPD") Frederick Lantzer ("Officer Lantzer") initiated a traffic stop of a pick up truck because it displayed a passenger car license plate. The license plate was also registered to a different vehicle. Whitley, the driver of the truck, provided his name to Officer Lantzer and admitted that he lacked a valid driver's license. After Whitley was unable to produce the truck's registration, the officer confirmed that the truck was not registered to Whitley and that his driver's license was suspended.

[4] The truck was parked on Auburn Street near the intersection Auburn Street and Washington Street. Because the truck was partially in the roadway, Officer Lantzer decided it was necessary to impound the truck, and IMPD Officer Tim Huddleston ("Officer Huddleston) conducted the administratively required inventory search roadside. During the search, the officer discovered a "decorative box" on the front passenger's seat containing a substance later identified as more than seven grams of methamphetamine, a lighter, a package

of rolling papers, a money clip, a burnt marijuana cigarette, and a pill bottle. The pill bottle contained two alprazolam pills and eight clonazepam pills, Schedule IV prescription drugs for which Whitley had no prescriptions.

[5] Whitley was also searched incident to his arrest, and a glass pipe commonly used to smoke methamphetamine was found in his pocket. He also had $1135 in his wallet.

[6] On February 24, 2014, Whitley was charged with Class A felony dealing in methamphetamine, Class C felony possession of methamphetamine, Class D felony possession of a controlled substance, and Class A misdemeanor driving while suspended. On September 10, 2014, Whitley filed a motion to suppress the evidence seized during the search of the truck, arguing that the warrantless search violated his rights under the Fourth Amendment and Article 1, Section 11.

[7] At the hearing held on Whitley's motion, the trial court admitted into evidence the IMPD's General Order 7.3 on Towing and Impounding Vehicles. The order states that an IMPD officer may impound a vehicle if it is "[b]eing operated by a non-licensed or suspended driver" and defines a vehicle inventory search as "an administrative, routine and warrantless search of the passenger area (including the glove compartment), trunk, and closed containers[.]" Ex. Vol., State's Ex. 1. The order also provides that inventory searches "should not be motivated by an officer's desire to investigate and seize evidence of a criminal act." *Id*. Also, "[w]henever an officer takes a vehicle into custody, an inventory

search will be conducted prior to impoundment and a detailed listing of any property found in the vehicle will be made." *Id.* The order also directs the officer to search all containers. *Id.* Finally, the order requires all property discovered during an inventory search to "be listed in the officer's personal notebook." *Id.*

[8] Officer Lantzer testified that the truck was impounded because the owner was not identified to the officers and it was parked halfway in the roadway blocking a lane of traffic. Tr. pp. 13-14. Officer Huddleston performed the inventory search but did not complete any related paperwork. He told Officer Lantzer what he found in the truck, and Officer Lantzer listed certain items in the probable cause affidavit. Photographs taken of the interior of truck by the evidence technician after Officer Huddleston's search established that other personal items were in the truck that were not listed by Officer Lantzer in the probable cause affidavit.

[9] On November 25, 2014, the trial court issued its order denying Whitley's motion to suppress. In its order, the court observed that impoundment of the truck was proper but also concluded that the procedures outlined in the IMPD's General Order 7.3 on Towing and Impounding Vehicles were not followed. Appellant's App. p. 52. Specifically, the court noted that Officer Huddleston "did not list any items" found during the inventory search: "not in the officer's personal notebook, not on the tow slip, or anywhere else." Appellant's App. p. 52. However, Officer Lantzer listed items discovered during the inventory search in his probable cause affidavit. Therefore, the court concluded that

"there is nothing to indicate that this was anything other than a routine inventory search and was not a pretext for a narcotics investigation." *Id.*

[10] Thereafter, Whitley filed a motion requesting that the trial court certify its order denying his motion to suppress for interlocutory appeal. The trial court granted his motion, and on February 6, 2015, our court accepted jurisdiction of Whitley's interlocutory appeal.[1]

## Standard of Review

[11] We review both a trial court's denial of a motion to suppress and its rulings on the admissibility of evidence for an abuse of discretion. *Goens v. State*, 943 N.E.2d 829, 831 (Ind. Ct. App. 2011). A trial court abuses its discretion if its decision is clearly against the logic and effect of the facts and circumstances before it. *Id.* In conducting our review, we will neither reweigh the evidence nor assess witness credibility, and we will consider conflicting evidence in a light most favorable to the trial court's ruling. *Id.* at 831-32. "However, we must also consider the uncontested evidence favorable to the defendant." *Webster v. State*, 908 N.E.2d 289 (Ind. Ct. App. 2009), *trans. denied*.

## Standing

[12] As an initial matter, the State argues that Whitley did not establish that he had a reasonable expectation of privacy in the truck or that he had standing under

---

[1] On October 21, 2015, we held oral argument in this case at Indiana Tech Law School in Fort Wayne, Indiana. We thank the law school's faculty and staff for their hospitality, and commend counsel for the quality of their written and oral advocacy.

the Indiana Constitution that would allow him to challenge the validity of the search. However, the State concedes that it did not raise this argument at the hearing. *See* Appellee's Br. at 9.

[13] Under the Fourth Amendment, "a defendant must demonstrate that he personally has an expectation of privacy in the place searched, and that his expectation is reasonable[.]" *Minnesota v. Carter*, 525 U.S. 83, 88 (1998). Our supreme court has held that the driver of a borrowed car has met his burden under the federal and state constitutions if the driver testifies that he had consent to drive the car and the State introduces no evidence to the contrary. *Campos v. State*, 885 N.E.2d 590, 599 (Ind. 2008). However, "where the [S]tate has failed to make any trial court challenge as to whether the defendant has a legitimate expectation of privacy, the State may not raise the issue for the first time on appeal." *Gregory v. State*, 885 N.E.2d 697, 704 (Ind. Ct. App. 2008), *trans. denied. See also Armour v. State*, 762 N.E.2d 208, 213 (Ind. Ct. App. 2002), *trans. denied*.

[14] To challenge a search under the Indiana Constitution, "a defendant must establish ownership, control, possession, or interest" in the premises searched. *Campos*, 885 N.E.2d at 598 (quoting *Peterson v. State*, 674 N.E.2d 528, 534 (Ind. 1996)). The State must raise the issue of standing at the trial court level in order to preserve it for appeal. *See Willis v. State*, 780 N.E.2d 423, 427 (Ind. Ct. App. 2002) (citing *Everroad v. State*, 590 N.E.2d 567, 569 (Ind. 1992)).

Because the State did not object to standing and/or argue that Whitley did not have a reasonable expectation of privacy in the truck in the proceedings below, we conclude that the State has waived these arguments for the purposes of this appeal.

## The Fourth Amendment

The Fourth Amendment to the United States Constitution, made applicable to the states through the Fourteenth Amendment, protects persons from unreasonable searches and seizures. *Taylor v. State*, 842 N.E.2d 327, 330 (Ind. 2006). The fundamental purpose of the Fourth Amendment is to protect the legitimate expectations of privacy that citizens possess in their persons, homes, and belongings. *Id.* (citing *Ybarra v. Illinois*, 444 U.S. 85, 91 (1979)). Subject to certain well-established exceptions, a warrant is required to demonstrate that a search is reasonable. *Berry v. State*, 967 N.E.2d 87, 90 (Ind. Ct. App. 2012). The State bears the burden of proving that an exception to the warrant requirement existed at the time of the search. *Id.*

A valid inventory search is an exception to the warrant requirement. *Taylor*, 842 N.E.2d at 330 (citing *South Dakota v. Opperman*, 428 U.S. 364, 372 (1976)). Police are permitted to conduct a warrantless search of a lawfully impounded vehicle if the search is designed to produce an inventory of the vehicle's contents. *Fair v. State*, 627 N.E.2d 427, 431 (Ind. 1993). The rationale for an inventory search is three-fold: (1) protection of private property in police custody; (2) protection of police against claims of lost or stolen property; and (3) protection of police from possible danger. *Taylor,* 842 N.E.2d at 330-31.

"As in all Fourth Amendment cases, the test of constitutionality in inventory cases is reasonableness." *Fair,* 627 N.E.2d at 431. In determining the reasonableness of an inventory search, we examine all the facts and circumstances of the case. *Id.* We consider the propriety of the impoundment giving rise to the search and the scope of the inventory search itself. *Id.* The search must be conducted pursuant to and in conformity with standard police procedures. *Faust v. State*, 804 N.E.2d 1242, 1244-45 (Ind. Ct. App. 2004), *trans. denied.* Evidence of established local policy and procedure is required "to ensure that the inventory is not a pretext for a general rummaging in order to discover incriminating evidence." *Edwards v. State*, 762 N.E.2d 128, 134 (Ind. Ct. App. 2002) (quoting *Florida v. Wells*, 495 U.S. 1, 4 (1990)) (internal quotation marks omitted), *aff'd on reh'g*, 768 N.E.2d 506, *trans. denied.*

Impounding a vehicle is proper when authorized by statute or done pursuant to the community caretaking function of the police. *Taylor*, 842 N.E.2d at 331. Indiana Code section 9-18-2-43 provides in relevant part:

> (a) ... [A] law enforcement officer authorized to enforce motor vehicle laws who discovers a vehicle required to be registered under this article that does not have the proper certificate of registration or license plate:
>
>> (1) shall take the vehicle into the officer's custody; and
>>
>> (2) may cause the vehicle to be taken to and stored in a suitable place until:
>>
>>> (A) the legal owner of the vehicle can be found; or
>>>
>>> (B) the proper certificate of registration and license plates have been procured.

Whitley concedes that impoundment of the truck was proper.

His concession as to the propriety of impoundment notwithstanding, Whitley argues that the search conducted pursuant to the impoundment was unreasonable. He contends that the inventory was a pretextual search for evidence of a crime, which is established by the fact that IMPD did not follow standard police procedures.

"An inventory search must not be a ruse for a general rummaging in order to discover incriminating evidence." *Florida v. Wells*, 495 U.S. 1, 4 (1990). "'The policy or practice governing inventory searches should be designed to produce an inventory." *Id.* "The individual police officer must not be allowed so much latitude that inventory searches are turned into 'purposeful and general means of discovering evidence of crime[.]'" *Id.* (quoting *Colorado v. Bertine*, 479 U.S. 367, 376 (1987)).

Inventory searches performed in conformity with standard police procedures are reasonable under the Fourth Amendment, but the State must present more than the conclusory testimony of a police officer that the search was conducted as a routine inventory. *Edwards*, 762 N.E.2d at 133. An evidentiary basis must exist for evaluating whether an inventory search was performed in conformity with standard police procedures, and the circumstances surrounding the search must indicate that the search was conducted pursuant to established procedures. *See id.*

[23] However, failure to follow established police policy does not necessarily establish that the inventory was a pretext. *See Jackson v. State*, 890 N.E.2d 11, 19 (Ind. Ct. App. 2008). "Inventory searches are not always unreasonable when standard procedures are not followed." *Id.* (citing *United States v. Mayfield*, 161 F.3d 1143, 1145 (8th Cir. 1998); *see also Whren v. United States*, 517 U.S. 806, 816 (1996) (stating "it is a long leap from the proposition that following regular procedures is some evidence of lack of pretext to the proposition that failure to follow regular procedures proves (or is an operational substitute for) pretext."). "[T]o defeat a charge of pretext the State must establish the existence of sufficient regulations and that the search at issue was conducted in conformity with them." *Fair*, 627 N.E.2d at 435.

[24] In *Jackson*, we concluded that the inventory search did not violate the defendant's Fourth Amendment or Article 1, Section 11 rights because the arresting and assisting officer generally followed the police department's towing and impound policy. 890 N.E.2d at 19. We rejected the defendant's challenge to the inventory search because documentation of the inventory search was not completed on the "inventory/tow card" as required in the police department policy but on a form titled "Police Officer/Rental Property Report." *Id.* at 18. We also concluded that the fact the assisting officer completed the inventory was merely a minor deviation from the department's policy; therefore, the inventory search was not invalid and no circumstances existed that would lead us to conclude that the inventory was a pretext for general rummaging. *Id.* at 18-19.

[25] More recently, our court examined an inventory search in *Wilford v. State*, 31 N.E.3d 1023, 1029 (Ind. Ct. App. 2015), *trans. pending*. In that case, IMPD initiated a traffic stop because Wilford's vehicle had multiple cracks in the windshield and other obvious equipment problems. The officer also discovered that Wilford's driver's license was suspended. IMPD impounded the vehicle because of its unsafe condition. An IMPD officer conducted an inventory search at the scene prior to towing and discovered a stolen handgun in the front center console.

[26] At the hearing, the IMPD officer testified concerning the department's standard procedure when performing inventory searches, but the policy itself was not offered into evidence. The officer who performed the search described an inventory search as "a department policy that when we take custody of the vehicle we go through and we're checking for valuables." *Id.* at 1033. The officer then outlined the inventory search process:

> The first thing I do is I look under the front seat uh, I check the uh, center console, I go to the rear driver side, I check the compartment on the rear driver side. I go around the other side of the vehicle and I check the front passenger, I check the rear passenger area and then I check the trunk.

*Id.* (record citation omitted). We held that the officer's testimony was sufficient to show that the search was part of established IMPD procedures. *Id. Cf. Edwards*, 762 N.E.2d at 133 (concluding that the inventory search was improper because "the record d[id] not include the substance of any police department policy regarding inventory searches, or even indicate there is such a policy").

[27] In this case, IMPD's General Order 7.3 on Towing and Impounding Vehicles was admitted into evidence, and the document specifically describes the steps an IMPD officer is required to take when impounding a vehicle. The order directs IMPD officers to perform an inventory search prior to impounding a vehicle and make a detailed listing of all items found during the search. Ex. Vol., State's Ex. 1.

[28] Officer Huddleston searched the interior of the truck, the bed of the truck, the glove box, and containers inside the truck. Tr. pp. 30-31. However, he did not complete any paperwork related to the traffic stop or subsequent investigation. Instead, he told Officer Lantzer what he found, and Officer Lantzer described those items in the probable cause affidavit. After the search, an evidence technician took photographs of the truck's interior.

[29] During cross-examination, Officer Huddleston reviewed the photographs and admitted that he failed to report all personal items in the truck such as a book, spare tire, jumper cables, tools, an amplifier, and rims. Tr. pp. 33-35. These items were also not listed in the probable cause affidavit. Officer Huddleston testified that it was "not typical" for him "to make notes of such things like property in the vehicle" when he is the assisting officer. Tr. p. 35. He believed that Officer Lantzer "would see to that[.]" *Id*.

[30] Officer Lantzer testified that he asked Officer Huddleston to perform the inventory search. Officer Huddleston told Officer Lantzer that he found a decorative box that "contained what he believed to be a controlled substance."

Tr. p. 11. Officer Huddleston then asked Officer Lantzer to view the vehicle and "pointed out that there were other things in the vehicle." Tr. p. 12. Officer Lantzer admitted that he did not list the items in the vehicle in his field notebook as required in IMPD General Order 7.3 on Towing and Impounding Vehicles. He stated he listed the items in the probable cause affidavit, but the only items listed besides the decorative box and its illegal contents were auto parts, a remote-control car, and trash. Appellant's App. p. 15.

[31] Further, Officer Lantzer testified that although he was aware that the IMPD Order required officers to list the items found in an inventory search in the officer's personal notebook, his general practice is to list the items on the tow slip. Tr. p. 17. However, Officer Lantzer did not list any items on the tow slip in this case.

[32] The circumstances in this case present more than a minor deviation from IMPD's General Order 7.3 on Towing and Impounding Vehicles.[2] Officer Lantzer was familiar with IMPD's policy for inventorying the contents of an impounded vehicle and in accordance with that policy, he asked Officer Huddleston to perform an inventory search. Yet, the officers failed to complete an accurate inventory of the truck's contents, and Officer Lantzer listed only

---

[2] Whitley urges our court to adopt a bright-line rule that an inventory search is improper if any deviation from standard police policy exists. However, our courts have not adopted this approach, and we are not compelled to do so in this case. It is worth reiterating that "[b]y performing inventories at the scene and by failing to follow the written policies of their departments, officers risk suppression of any evidence recovered during such inventories." *Jackson v. State*, 890 N.E.2d 11, 19 (Ind. Ct. App. 2008). Moreover, IMPD's continued failure to abide by its own policy for impounding and inventorying the contents of vehicles erodes the public's confidence in our law enforcement officers and in rule of law, in general.

certain items found in the truck in the probable cause affidavit. It is apparent that after the Officer Huddleston found the contraband in the "decorative box," he ceased inventorying the remaining contents of the truck.

[33] However, our supreme court has stated that "so that as long as the impoundment is pursuant to the community caretaking function and is not a mere subterfuge for investigation, the coexistence of investigatory and caretaking motives is permissible." *Fair*, 627 N.E.2d at 436 n.7. *See also Moore v. State*, 637 N.E.2d 816, 820 (Ind. Ct. App. 2004) (holding that the fact that an officer's suspicion arose during the course of an inventory search did not render the search pretexual), *trans. denied*.

[34] Officer Lantzer's decision to impound the truck was unquestionably reasonable. No evidence suggests that when Officer Huddleston began the search at Officer Lantzer's request that he was looking for evidence of a crime. *See Colorado v. Bertine*, 479 U.S. 367, 372 (1987) (observing "there was no showing that the police, who were following standardized procedures, acted in bad faith or for the sole purpose of investigation" and holding that evidence obtained during an inventory search was admissible). The State is also fortunate that the photographs taken of the interior of the truck by the evidence technician provided a photographic record of its contents. For all of these reasons, we conclude that Officers Huddleston's and Lantzer's failure to list all items found in the truck in the officer's personal notebook as required by IMPD policy, did not, in itself, render the search pretexual, and therefore, the search was reasonable under the Fourth Amendment.

## Article 1, Section 11

[35] Article 1, Section 11 of the Indiana Constitution provides, "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search or seizure, shall not be violated[.]" Although the language of Section 11 is virtually identical to its Fourth Amendment counterpart, our supreme court has independently interpreted and applied Section 11. *Mitchell v. State*, 745 N.E.2d 775, 785-86 (Ind. 2001). As to inventory searches in particular, we explained in *Wilford*:

> When examining the constitutionality of a search, the ultimate standard dictated by Article 1, Section 11 is the same as that of the Fourth Amendment: reasonableness of the police conduct. As under the Fourth Amendment, a valid inventory search is a recognized exception to the Article 1, Section 11 warrant requirement. However, the tests for determining a rights violation differ under the two provisions. Under the Indiana Constitution, the State must show that an inventory search was reasonable in light of the totality of circumstances.

31 N.E.3d at 1033-34 (citations omitted).

[36] Notwithstanding the independent analytical framework of Section 11,[3] "our supreme court has found that the factors that speak to the reasonableness of an inventory search under the Fourth Amendment are also relevant to the

---

[3] The reasonableness of a search or seizure turns on a balance of: "1) the degree of concern, suspicion, or knowledge that a violation has occurred, 2) the degree of intrusion the method of the search or seizure imposes on the citizen's ordinary activities, and 3) the extent of law enforcement needs." *Litchfield v. State*, 824 N.E.2d 356, 361 (Ind. 2005).

reasonableness of an inventory search under Article 1, Section 11." *Id.* at 1034 (citing *Taylor*, 842 N.E.2d at 334). For this reason, the State relies on its Fourth Amendment analysis to also support its argument that the inventory search was reasonable under Article 1, Section 11.[4]  Appellee's Br. at 19.

[37]   Officers Lantzer and Huddleston failed to comply with the IMPD's standard policy for inventorying the contents of an impounded vehicle. The officers did not record all personal items in the truck, and Officer Lantzer listed only certain items in the probable cause affidavit. However, we must still consider the reasonableness of the inventory search despite the officers' failure to follow IMPD General Order 7.3 on Towing and Impounding Vehicles.

[38]   Officer Lantzer's decision to impound the truck was indisputably proper, and therefore, pursuant to IMPD policy, the officers were required to perform an inventory search. The search was also minimally intrusive under these circumstances. For these reasons, and the reasons the inventory search was reasonable under the Fourth Amendment, Officer Lantzer's decision to impound and conduct an inventory search of the truck Whitley was driving was reasonable under Article 1, Section 11. *See Taylor*, 842 N.E.2d at 334; *Wilford*, 31 N.E.3d 1023. Once again, however, as with our Fourth Amendment analysis, we remind all law enforcement officials that substantial compliance with administrative policies is called for if they desire searches to withstand

---

[4] Whitley argues that the State's response to his Article 1, Section 11 argument amounts to failure to argue the issue, and therefore, the prima facie error standard should apply.  But the State cited appropriate caselaw, the Litchfield test, and summarized the argument it raised in its Fourth Amendment analysis.

review by the courts and, more importantly, if they expect citizens to have confidence in law enforcement officials and in rule of law, in general.

## Conclusion

[39] The search of the truck was reasonable under the Fourth Amendment and Article 1, Section 11. We therefore affirm the trial court's denial of Whitley's motion to suppress.

[40] Affirmed.

Vaidik, C.J., and Barnes, J., concur.