

FILED

Aug 17 2016, 6:51 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Timothy J. O'Connor
O'Connor & Auersch
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Michael Gene Worden
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Robert Weathers,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

August 17, 2016

Court of Appeals Case No.
49A04-1601-CR-3

Appeal from the Marion Superior
Court

The Honorable Shatrese M.
Flowers, Judge
The Honorable David M. Seiter,
Commissioner

Trial Court Cause No.
49G20-1504-F5-13181

**Bradford, Judge.**

# Case Summary

[1] On April 15, 2015, a Marion County Sheriff's Deputy initiated a traffic stop after observing that the expiration date on a vehicle's license plate was not visible. The vehicle in question was being driven by Appellant-Defendant Robert Weathers. During the traffic stop, it was discovered that Weathers did not have a valid driver's license. Weathers was placed under arrest for driving without a license. The deputy eventually decided to impound the vehicle in question after Weathers failed to find someone to retrieve the vehicle. The deputy then completed a warrantless inventory search of the vehicle, during which the deputy recovered a handgun.

[2] The next day, Weathers was charged with Class A misdemeanor carrying a handgun without a license and Class A misdemeanor driving while suspended. The handgun charge was subsequently elevated to a Level 5 felony by virtue of Weathers's prior felony conviction. The handgun was admitted into evidence at trial, over Weathers's objection. Weathers was subsequently found guilty of both Level 5 carrying a handgun without a license and Class A misdemeanor driving while suspended.

[3] On appeal, Weathers contends that the trial court abused its discretion in admitting the handgun into evidence, arguing that the warrantless inventory search conducted by the deputy was unreasonable and thus violated his rights under the Fourth Amendment to the United States Constitution. Weathers alternatively contends that even if the handgun was properly admitted into

evidence, the evidence was insufficient to sustain his Level 5 felony conviction. Concluding that the trial court did not abuse its discretion in admitting the handgun at trial and that the evidence is sufficient to sustain Weathers's conviction for Level 5 felony possession of a handgun without a license, we affirm.

## Facts and Procedural History

[4] On April 15, 2015, Marion County Sheriff's Deputy Osnel Andre was patrolling the west side of Indianapolis when he spotted a black Chevy Trailblazer ("the vehicle"). Deputy Andre observed that the expiration date for the vehicle's registration was obscured. After following the vehicle for a short time, and not being able to see the expiration date on the license plate, Deputy Andre initiated a traffic stop. The vehicle stopped about sixteen to eighteen inches from the curb. Deputy Andre made contact with the driver, who was subsequently identified as Weathers, and asked for his license and registration. Weathers provided Deputy Andre with the vehicle's registration but informed Deputy Andre that he did not have a driver's license. Deputy Andre reviewed the information provided by Weathers and determined that the vehicle was not registered to Weathers and that Weathers's driver's license was suspended. Deputy Andre then placed Weathers under arrest for driving while suspended.

[5] After placing Weathers under arrest, Deputy Andre gave Weathers, who had been alone in the vehicle, the opportunity to find someone to retrieve the vehicle. Weathers was unable to do so within the time provided by Deputy

Andre. Deputy Andre thereafter decided that it was necessary to impound the vehicle. He then called for backup and asked Weathers whether there was "anything in [the vehicle] that (Inaudible) get anything out of the [vehicle] (Inaudible) -- guns and drugs in the [vehicle] before I seek to search the [vehicle] before I impound the vehicle[.]" Tr. p. 19. Weathers responded that there was a handgun inside the vehicle.[1]

[6] Deputy Andre approached the vehicle, looked inside, and observed the barrel of the handgun located where Weathers had indicated, *i.e.*, between the driver's seat and the center console. After securing the handgun, Deputy Andre completed a warrantless inventory search of the vehicle. He found nothing of value in the vehicle other than the handgun and the vehicle's registration. Deputy Andre subsequently learned that Weathers did not have a license for the handgun that was recovered from the vehicle.

[7] On April 16, 2015, Appellee-Plaintiff the State of Indiana ("the State") charged Weathers with Class A misdemeanor carrying a handgun without a license and Class A misdemeanor driving while suspended. The State subsequently sought to have the handgun charge elevated to a Level 5 felony by virtue of Weathers's prior felony conviction. Weathers waived his right to a jury trial.

---

[1] We note that although Weathers was handcuffed and under arrest at the time he made this statement, Weathers did not argue at trial or on appeal that his statement was made in violation of his right against self-incrimination.

The trial court conducted a bench trial on November 12, 2015. During trial, Weathers objected to and moved to suppress all evidence stemming from the warrantless search of the vehicle. This included the handgun which, again, was recovered during the search. The trial court initially denied Weathers's motion to suppress, but subsequently changed its ruling and took the matter under advisement. On December 8, 2015, the trial court denied Weathers's motion to suppress and found him guilty of Level 5 felony carrying a handgun without a license and Class A misdemeanor driving while suspended. The trial court sentenced Weathers to a term of five years, with two of those years suspended. This appeal follows.

# Discussion and Decision

Weathers raises two contentions on appeal. First, Weathers contends that the trial court abused its discretion in admitting certain evidence at trial. Alternatively, Weathers contends that the evidence is insufficient to sustain his Level 5 felony carrying a handgun without a license conviction. We will discuss each contention in turn.

## I. Admission of Evidence

### A. Standard of Review

Weathers contends that the handgun recovered from the vehicle should not have been admitted into evidence because it was discovered in violation of his Fourth Amendment Rights. Although Weathers argues on appeal that the trial

court should have granted his motion to suppress the handgun, Weathers appeals following the conclusion of his trial. We will therefore consider his appeal as a request to review the trial court's decision to admit the handgun into evidence at trial. *Carpenter v. State*, 18 N.E.3d 998, 1001 (Ind. 2014) (citing *Guilmette v. State*, 14 N.E.3d 38, 40 (Ind. 2014)).

> The trial court has broad discretion to rule on the admissibility of evidence. [*Clark v. State*, 994 N.E.2d 252, 259-60 (Ind. 2013)]. We review its rulings "for abuse of that discretion and reverse only when admission is clearly against the logic and effect of the facts and circumstances and the error affects a party's substantial rights." [*Id*. at 260]. But when an appellant's challenge to such a ruling is predicated on an argument that impugns the constitutionality of the search or seizure of the evidence, it raises a question of law, and we consider that question de novo. *Kelly v. State*, 997 N.E.2d 1045, 1050 (Ind. 2013).

*Guilmette*, 14 N.E.3d at 40-41. Further, when reviewing a trial court's ruling on the admissibility of evidence obtained from an allegedly illegal search, we do not reweigh the evidence but defer to the trial court's factual determinations unless clearly erroneous. *Hansbrough v. State*, 49 N.E.3d 1112, 1114-15 (Ind. Ct. App. 2016) (citing *Meredith v. State*, 906 N.E.2d 867, 869 (Ind. 2009)), *trans. denied*. "We view conflicting evidence most favorable to the ruling, and we consider 'afresh any legal question of the constitutionality of a search and seizure.'" *Id*. (quoting *Meredith*, 906 N.E.2d at 869).

## B. The Fourth Amendment

The Fourth Amendment to the United States Constitution protects "[t]he right of the people to be secure in their persons,

houses, papers, and effects, against unreasonable searches and seizures....'' ''[T]he ultimate touchstone of the Fourth Amendment is 'reasonableness[.]''' *Brigham City v. Stuart*, 547 U.S. 398, 403, 126 S.Ct. 1943, 164 L.Ed.2d 650 (2006). We approach cases involving warrantless searches with the basic understanding that ''searches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions.'' *Arizona v. Gant*, 556 U.S. 332, 338, 129 S.Ct. 1710, 173 L.Ed.2d 485 (2009) (quoting *Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967) (footnote omitted)). Where there is no clear practice concerning the constitutionality of a search, the reasonableness of the search is judged by balancing ''the degree to which it intrudes upon an individual's privacy and ... the degree to which it is needed for the promotion of legitimate governmental interests.'' *Wyoming v. Houghton*, 526 U.S. 295, 299-300, 119 S.Ct. 1297, 143 L.Ed.2d 408 (1999).

*Wertz v. State*, 41 N.E.3d 276, 279 (Ind. Ct. App. 2015), *trans. denied*.

Application of the Fourth Amendment has been extended to the States through the Due Process Clause of the Fourteenth Amendment. *Hansbrough*, 49 N.E.3d at 1114-15.

## C. Warrantless Inventory Search of an Impounded Vehicle

In this case, Weathers does not dispute the validity of the initial traffic stop or contest Deputy Andre's decision to impound the vehicle. Instead, he asserts that the inventory search conducted by Deputy Andre was unreasonable. Weathers therefore argues that the subsequent search of the vehicle was invalid and the evidence obtained was inadmissible.

[13] Warrantless searches are presumed unreasonable and may be excused only upon a showing of circumstances that yield a diminished expectation of privacy. *Wertz*, 41 N.E.3d at 280. "The State bears the burden of proving that a warrantless search falls within an exception to the warrant requirement." *Trotter v. State*, 933 N.E.2d 572, 579 (Ind. Ct. App. 2010) (citing *Taylor v. State*, 842 N.E.2d 327, 330 (Ind. 2006)). "Whether a particular warrantless search violates the guarantees of the Fourth Amendment depends on the facts and circumstances of each case." *Id.* (citing *Rush v. State*, 881 N.E.2d 46, 50 (Ind. Ct. App. 2008)).

[14] The inventory search of an impounded vehicle is one such exception to the warrant requirement "since it serves an administrative, not investigatory, purpose—because when police lawfully impound a vehicle, they must also perform an administrative inventory search to document the vehicle's contents to preserve them for the owner and protect themselves against claims of lost or stolen property." *Wilford v. State*, 50 N.E.3d 371, 374 (Ind. 2016).

[15] The State bears the burden of proving that a warrantless inventory search was reasonable under the Fourth Amendment. *Id.* (citing *Fair v. State*, 627 N.E.2d 427, 431 (Ind. 1993)).

> Our evaluation [of the reasonableness of a warrantless inventory search] requires that "we examine the evidence favorable to the trial court's decision, with all disputes resolved in favor of the ruling," and also consider "any uncontested evidence favorable to the appellant." *Fair*, 627 N.E.2d at 434. And we will overturn the trial court's factual findings only if they are clearly erroneous.

*Id.* But the ultimate determination of "reasonableness" is a constitutional legal question meriting independent consideration by this Court. *Id.*

*Id.* (brackets added).

### i. Impoundment

Proper impoundment is the "threshold question" to a valid inventory search. *Id.* (citing *Fair*, 627 N.E.2d at 431).

> Impoundment is reasonable if it is authorized either by statute or the police's discretionary community-caretaking function. [*Fair*, 627 at 431-32]. Impoundment pursuant to a statute is necessarily reasonable because the Legislature has deemed that citizens' privacy interests in their cars yield to State interests in those circumstances, making police inventorying a necessary collateral administrative function. Discretionary impoundment, by contrast, is an exercise of the police community-caretaking function in order to protect the car and community from hazards. Discretionary impoundments, too, may be reasonable—but as we recognized in *Fair*, and more recently in *Taylor*, they are vulnerable to constitutional reasonableness challenges because of their potential for misuse as pretext for warrantless investigative searches under the guise of inventory. *See Fair*, 627 N.E.2d at 435; *Taylor*, 842 N.E.2d at 331-33. Unless the impoundment is proper, then, an inventory search is per se unreasonable and any contraband found during the search is inadmissible "poisoned fruit."

*Id.* at 375.

With respect to the validity of Deputy Andre's decision to impound the vehicle, the record reveals that after initiating a valid traffic stop, Deputy Andre

discovered that Weathers's driving privileges had been suspended and that he was driving without a valid driver's license. Deputy Andre then placed Weathers under arrest for driving while suspended. Deputy Andre gave Weathers the opportunity to have someone come and retrieve the vehicle and only decided to impound the vehicle when no one came to get the vehicle. The vehicle could not remain where it was because it was parked approximately sixteen to eighteen inches from the curb in a position in which it could potentially impede traffic. Again, Weathers does not contest the validity of Deputy Andre's decision to impound the vehicle. Given these facts together with the need for law enforcement to provide unobstructed roadways, we agree that Deputy Andre's decision to impound the vehicle was reasonable.

### ii. Search

[18]     Having determined that Deputy Andre's decision to impound the vehicle was reasonable, we turn our attention to Deputy Andre's search of the vehicle.

> [T]he lawful custody of an impounded vehicle does not of itself dispense with the constitutional requirement of reasonableness in regard to the searches conducted thereafter. Instead, to pass constitutional muster, the search itself must be conducted pursuant to standard police procedures. [*Colorado v. Bertine*, 479 U.S. 367, 375, 107 S.Ct. 738, 743, 93 L.Ed.2d 739 (1987)]. The rule that standardized criteria or established routine must exist as a precondition to a valid inventory search is designed to ensure that the inventory is not a pretext "for a general rummaging in order to discover incriminating evidence." *Florida v. Wells*, 495 U.S. 1, 4, 110 S.Ct. 1632, 1635, 109 L.Ed.2d 1 (1990). In order to perform this function, the procedures must be rationally designed to meet the objectives that justify the search in the first

place, *Isom v. State* (1992), Ind. App., 589 N.E.2d 245, and must sufficiently limit the discretion of the officer in the field. *Wells*, 495 U.S. at 4, 110 S.Ct. at 1635; *People v. Galak*, 80 N.Y.2d 715, 594 N.Y.S.2d 689, 610 N.E.2d 362 (1993). Searches in conformity with such regulations are reasonable under the Fourth Amendment. [*South Dakota v. Opperman*, 428 U.S. 364, 376, 96 S.Ct. 3092, 3100, 49 L.Ed.2d 1000 (1976)]. Thus, to defeat a charge of pretext the State must establish the existence of sufficient regulations and that the search at issue was conducted in conformity with them.

*Fair*, 627 N.E.2d at 435.

[19] In the instant matter, Weathers argues that Deputy Andre's search of the vehicle was unreasonable because Deputy Andre did not conduct the search in conformity with applicable department procedures. Specifically, Weathers claims that Deputy Andre failed to comply with the requirement that he compile a written inventory of all items found in the vehicle.

[20] Again, in order for a warrantless inventory search to pass constitutional muster, the search "must be conducted pursuant to standard police procedures." *Edwards v. State*, 762 N.E.2d 128, 133 (Ind. Ct. App. 2002); *see also Fair*, 627 N.E.2d at 435.

> Searches performed in conformity with standard police procedures are reasonable under the Fourth Amendment. [*Vehorn v. State*, 717 N.E.2d 869, 875 (Ind. 1999)]. However, the State must present more than conclusory testimony of an officer that the search was conducted as a routine inventory. [*Stephens v. State*, 735 N.E.2d 278, 282 (Ind. Ct. App. 2000), *trans. denied*]; *Rabadi v. State*, 541 N.E.2d 271, 275 (Ind. 1989). "The

> circumstances surrounding the intrusion must also indicate that
> the search was part of established and routine department
> procedures which are consistent with the protection of the police
> from potential danger and false claims of lost or stolen property
> and the protection of the property of those arrested." *Rabadi*, 541
> N.E.2d at 275.

*Edwards*, 762 N.E.2d at 133.  We recently concluded, however, that a "failure to follow established police policy does not necessarily establish that the inventory was a pretext" and that "[i]nventory searches are not always unreasonable when standard procedures are not followed." *Whitley v. State*, 47 N.E.3d 640, 646 (Ind. Ct. App. 2015) (citing *Jackson v. State*, 890 N.E.2d 11, 19 (Ind. Ct. App. 2008)), *trans. denied*.

[21] In *Whitley*, Indianapolis Metropolitan Police Officer Frederick Lantzer initiated a traffic stop of a pick-up truck because it displayed a passenger car license plate which was registered to a different vehicle. *Id*. at 642.  Whitley, who was driving the vehicle, admitted to Officer Lantzer that he lacked a valid driver's license. *Id*.  Because Whitley lacked a valid driver's license and the truck was partially in the roadway, Officer Lantzer determined it was necessary to impound the truck. *Id*.  Indianapolis Metropolitan Police Officer Tim Huddleston then conducted an inventory search of the truck. *Id*.  During the search, Officer Huddleston discovered drug paraphernalia, methamphetamine, and prescriptions drugs for which Whitley did not have a prescription. *Id*.  Officer Huddleston did not complete any paperwork in relation to the search and neither Officer Lantzer nor Officer Huddleston listed the items found in the

truck in their personal notebooks. *Id*. at 643. Officer Lantzer listed some, but not all, of the items found in the truck in his probable cause affidavit filed in relation to Whitley's arrest. *Id*. at 648.

[22] On appeal, Whitley argued that the trial court abused its discretion in admitting evidence relating to the drugs and drug paraphernalia found during the inventory search. *Id*. at 646. Specifically, Whitely argued that the search was unreasonable under the Fourth Amendment because Officers Lantzer and Huddleston failed to complete a written inventory of the items found during the search in their personal notebooks as was required by department policy. *Id*. We concluded that the circumstances of the case presented more than a minor deviation from the applicable policy, as it was apparent that Officer Huddleston ceased inventorying the remaining contents of the truck after finding the contraband. *Id*. at 648. However, because no evidence suggested that Officer Huddleston was looking for evidence of a crime when he began searching the truck at Officer Lantzer's request and there was a photographic record of the contents found in the truck, the Officers' failure to list all items found in the truck in their personal notebooks as was required by policy, did not, in itself, render the search pretextual. *Id*. We therefore concluded that the search was reasonable under the Fourth Amendment. *Id*.

[23] Here, the applicable policy concerning the impoundment and subsequent inventory search of vehicles provides as follows with respect to inventory searches:

A. Whenever an officer takes a vehicle into custody, an inventory search will be conducted prior to impoundment and a detailed listing of any property found in the vehicle will be made.

****

B. All property discovered during an inventory search, including those found in closed containers, will be listed in the officer's personal notebook.

State's Ex. 9, pp. 7.3-5, 7.3-6. The record demonstrates that Deputy Andre had knowledge of the policy relating to inventory searches. The record, however, lacks any indication that Deputy Andre followed the portion of the policy requiring him to create a detailed listing of any property found in the vehicle as it is void of any indication that Deputy Andre filled out an inventory slip after conducting the search of the vehicle. We are therefore left with the question of whether Deputy Andre's failure to comply with this portion of the policy renders his search unreasonable.

[24] In considering whether Deputy Andre's apparent failure to comply with the portion of the policy requiring him to complete a written inventory following his warrantless search of the vehicle, we note that it does not seem unreasonable to require that an officer conducing a warrantless search follow any and all written policies for conducting such a search. To hold otherwise would potentially create a slippery slope which would require law enforcement and the courts to determine whether a particular policy was of such importance that a failure to follow said policy would render a search unreasonable. On the other hand, under the specific facts of this case, we note that reversal on this

ground alone would not appear to be consistent with the purpose of the applicable portion of the policy.

[25] The parties indicate that the purpose of the requirement that an officer complete a written inventory is to protect both the individual and the deputy. With regard to the individual, the written inventory protects the individual from the potential theft of any valuable item found in the vehicle. *Taylor*, 842 N.E.2d at 330. With regard to the deputy, the written inventory protects the deputy from an allegation that the deputy took any item of value from the vehicle. *Id*.

[26] Here, however, Weathers does not contest the fact that the handgun was recovered from the vehicle or that it was recovered from the exact location where he told Deputy Andre it was located. Further, when Deputy Andre approached the vehicle, he could see the barrel of the handgun in plain view. Deputy Andre's apparent failure to complete a written inventory had no bearing on any of these facts. As such, upon review, we are unable to see how Weathers was prejudiced by Deputy Andre's apparent failure to complete a written inventory of all items found in the vehicle. We are also unconvinced that Deputy Andre's apparent failure to complete a written inventory of all items found in the vehicle suggests that his rationale for completing the warrantless inventory search was a pretext for completing an unlawful search. We therefore conclude that despite Deputy Andre's apparent failure to strictly follow all aspects of the relevant procedure, his warrantless inventory search of the vehicle was not unreasonable. *See Whitley*, 47 N.E.3d at 648 (providing that given the facts and circumstances surrounding the warrantless inventory search

of the vehicle, the officers' failure to list all items found in the vehicle in their personal notebooks as required by the applicable departmental policy did not, in itself, render the search pretextual, and therefore, the search was reasonable under the Fourth Amendment).

## II.  Sufficiency of the Evidence

[27]  Weathers alternatively contends that even if the trial court acted within its discretion in admitting the handgun into evidence, the evidence is insufficient to sustain the elevation of his conviction for possession of a handgun without a license from a Class A misdemeanor to a Level 5 felony.  For its part, the State contends that the evidence is sufficient to sustain the elevation of Weathers's conviction for possession of a handgun.

[28]  When reviewing the sufficiency of the evidence to support a conviction, appellate courts must consider only the probative evidence and reasonable inferences supporting the verdict.  It is the fact-finder's role, not that of appellate courts, to assess witness credibility and weigh the evidence to determine whether it is sufficient to support a conviction.  To preserve this structure, when appellate courts are confronted with conflicting evidence, they must consider it most favorably to the trial court's ruling.  Appellate courts affirm the conviction unless no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt.  It is therefore not necessary that the evidence overcome every reasonable hypothesis of innocence.  The evidence is sufficient if an inference may reasonably be drawn from it to support the verdict.

*Drane v. State*, 867 N.E.2d 144, 146-47 (Ind. 2007) (citations, emphasis, and quotations omitted).  "In essence, we assess only whether the verdict could be

reached based on reasonable inferences that may be drawn from the evidence presented." *Baker v. State*, 968 N.E.2d 227, 229 (Ind. 2012) (emphasis in original). Upon review, appellate courts do not reweigh the evidence or assess the credibility of the witnesses. *Stewart v. State*, 768 N.E.2d 433, 435 (Ind. 2002).

[29] Indiana Code section 35-47-2-1 provides that "a person shall not carry a handgun in any vehicle or on or about the person's body without being licensed under this chapter to carry a handgun…. A person who knowingly or intentionally violates this section commits a Class A misdemeanor. However, the offense is a Level 5 felony … if the person … has been convicted of a felony within fifteen (15) years before the date of the offense." Thus, in order to prove that Weathers committed the elevated Level 5 felony offense, the State was required to prove both that Weathers possessed a handgun without a license and that he had been convicted of a felony within the preceding fifteen years.

[30] Weathers asserts that the State failed to present sufficient evidence to prove that he had been convicted of a felony within the preceding fifteen years. Review of the record, however, demonstrates that regardless of what evidence was offered by the State, Weathers, by counsel, stipulated to the fact that Weather's had a prior felony conviction within the statutorily proscribed timeframe. Specifically, the record provides as follows:

> [Trial Court]: [Defense Counsel], I am going to go ahead and order a PSI just so that we are covered if it is a Level 5 felony.

[Defense Counsel]: I don't have any objection to that.

[Trial Court]:     I am assuming is there a stipulation once we get to that phase?  If I find him guilty of the A misdemeanor, have you guys stipulated to the second phase, or are we going to do the second phase that day?

[Defense Counsel]: I believe there is.  That's fine, Judge, we'll resolve it with the stipulation.

Tr. pp. 56-57.  The record further provides:

[The State]:      [Defense Counsel] indicated to the court the last time that he would stipulate to the prior.

[Trial Court]:     Okay.

[Defense Counsel]: And that's correct[.]

Tr. p. 61.  The State also offered certain documents which it claimed proved that Weathers had a prior felony conviction within the statutorily proscribed timeframe.  Weathers did not object to the admission of these documents and the documents were admitted into evidence.  The trial court subsequently found sufficient evidence to prove that Weathers had a prior felony conviction within the statutorily proscribed timeframe and, as a result, elevated Weathers's conviction for possession of a handgun to a Level 5 felony.

[31]    In light of the fact that Weathers, by counsel, stipulated to having a prior felony conviction within the statutorily proscribed timeframe, we conclude that the evidence is sufficient to sustain Weathers's conviction for Level 5 felony

possession of a handgun without a license. Weathers's claim to the contrary effectively amounts to a request for this court to reweigh the evidence, which we will not do. *See Stewart*, 768 N.E.2d at 435. Further, to the extent that Weathers claims that he merely stipulated to the admission of the documents offered by the State, we conclude that contrary to Weathers's claim, the record clearly demonstrates that Weathers stipulated to having a prior felony conviction.

[32] The judgment of the trial court is affirmed.

Pyle, J., and Altice, J., concur.