## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jun 30 2017, 9:05 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Timothy J. Burns
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill
Attorney General of Indiana

Monika Prekopa Talbot
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Desmond Gary, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff* | June 30, 2017 <br><br> Court of Appeals Case No. <br> 49A02-1701-CR-35 <br><br> Appeal from the Marion Superior Court <br><br> The Honorable Amy M. Jones, Judge <br><br> Trial Court Cause No. <br> 49G08-1512-CM-44391 |

**Crone, Judge.**

# Case Summary

[1] Desmond Gary appeals his conviction, following a bench trial, for class A misdemeanor carrying a handgun without a license. He contends that the trial court abused its discretion when it admitted into evidence the handgun found during an inventory search of his vehicle. Gary argues that the inventory search was pretextual and unreasonable in violation of the Fourth Amendment to the United States Constitution. Finding no constitutional violation and thus no abuse of discretion, we affirm.

# Facts and Procedural History

[2] On December 14, 2015, Indianapolis Metropolitan Police Department ("IMPD") Officer Daniel Majors was on patrol when he observed a green Nissan vehicle traveling with only one working headlight and an improperly displayed license plate. Officer Majors initiated a traffic stop and ran a routine records and driver's license check on Gary, the driver of the vehicle. The check indicated that Gary had an outstanding arrest warrant for child support and his driver's license was suspended. Officer Majors called for backup, and Officer Alexandra Lowcher and another officer arrived on scene. Officer Majors then placed Gary under arrest. Because there was no valid driver on scene[1] and the vehicle was illegally parked in a high crime area, Officer Majors decided to impound Gary's vehicle. Tr. Vol. 2 at 6.

---

[1] There was a juvenile passenger in the car with Gary. The juvenile was identified as his twelve-year-old niece and was subsequently released to her mother.

[3] Officer Lowcher conducted an inventory search of Gary's vehicle in accordance with IMPD's general order 7.3 on impounded vehicles. State's Ex. 1. Officer Lowcher found a backpack with money that belonged to Gary, and there were other bags in the backseat as well as some clothing. The juvenile passenger that had been in the vehicle identified a few of the bags in the backseat, which were released to her. When Officer Lowcher searched the unlocked center console in the vehicle, she found a handgun.[2] Gary spontaneously told the officers that he had forgotten that the gun was in the car. Officer Majors determined that Gary did not have a valid permit for the handgun.

[4] The State charged Gary with class A misdemeanor carrying a handgun without a license. Gary filed a pretrial motion to suppress the handgun seized from his vehicle. The trial court held a suppression hearing and thereafter denied the motion to suppress. Following a bench trial on December 15, 2016, the trial court found Gary guilty as charged. The trial court sentenced him to 365 days' incarceration with 359 days suspended to nonreporting probation. This appeal ensued.

## Discussion and Decision

[5] Gary contends that the trial court abused its discretion in admitting into evidence the handgun seized during the inventory search of his vehicle.

---

[2] At the suppression hearing, Officer Lowcher stated that she found the gun in the glove compartment. Tr. Vol. 3 at 14. However, during trial, both Officer Majors and Officer Lowcher testified that the handgun was found in the center console. Tr. Vol. 2 at 8, 13. The police report also indicated that the gun was found in the center console. Appellant's App. at 14.

Specifically, he claims that the search was pretextual and unreasonable in violation of the Fourth Amendment to the United States Constitution.[3] We give trial courts broad discretion on whether to admit or exclude evidence. *Blount v. State*, 22 N.E.3d 559, 564 (Ind. 2013). An abuse of discretion occurs when the trial court's ruling is, "clearly against the logic, facts, and circumstances presented. When reviewing the admissibility of evidence, we do not reweigh evidence, and we consider conflicting evidence most favorable to the trial court's ruling." *Phillips v. State*, 25 N.E.3d 1284, 1288 (Ind. Ct. App. 2015). "The constitutionality of a search is a question of law, which we review de novo." *J.K. v. State*, 8 N.E.3d 222, 228 (Ind. Ct. App. 2014).

## The search of Gary's vehicle did not violate the Fourth Amendment.

## Section 1 – The impoundment was reasonable.

[6] Before addressing the validity of the inventory search of Gary's vehicle, we must address the threshold question of the propriety of the impoundment. Our supreme court recently explained:

> Both the Fourth Amendment and Article 1, Section 11 protect "[t]he right of the people to be secure in their persons, houses, papers, and effects" against unreasonable searches and seizures. U.S. CONST. amend. IV; IND. CONST. art. 1, § 11. Automobiles

---

[3] Although Gary mentions the Indiana Constitution, he provides no separate or independent state constitutional analysis in his brief. Consequently, any state constitutional claim is waived. *See Abel v. State*, 773 N.E.2d 276, 278 n.1 (Ind. 2002) (failure to present authority or independent analysis supporting separate standard under state constitution results in waiver of state constitutional claim).

are among the "effects" protected by these provisions. *Brown v. State*, 653 N.E.2d 77, 79, 81 (Ind. 1995). Thus, when police impound a vehicle and inventory its contents, they effect a search and seizure, and both measures must be reasonable—that is, executed under a valid warrant or a recognized exception to the warrant requirement. [*Taylor v. State*, 842 N.E.2d 327, 330 (Ind. 2006)].

The inventory search is one such exception since it serves an administrative, not investigatory, purpose—because when police lawfully impound a vehicle, they must also perform an administrative inventory search to document the vehicle's contents to preserve them for the owner and protect themselves against claims of lost or stolen property. *Id.* at 330-31. Consequently, proper impoundment is the "threshold question" to valid inventory search. [*Fair v. State*, 627 N.E.2d 427, 431 (Ind. 1993)]. Nevertheless, as with any warrantless search or seizure, the State bears the burden of proving reasonableness, *id.* at 430, and that is where our analysis begins.

Impoundment is reasonable if it is authorized either by statute or the police's discretionary community-caretaking function. *Id.* at 431-32. Impoundment pursuant to a statute is necessarily reasonable because the Legislature has deemed that citizens' privacy interests in their cars yield to State interests in those circumstances, making police inventorying a necessary collateral administrative function. Discretionary impoundment, by contrast, is an exercise of the police community-caretaking function in order to protect the car and community from hazards. Discretionary impoundments, too, may be reasonable—but as we recognized in *Fair*, and more recently in *Taylor*, they are vulnerable to constitutional reasonableness challenges because of their potential for misuse as pretext for warrantless investigative searches under the guise of inventory. *See Fair*, 627 N.E.2d at 435; *Taylor*, 842 N.E.2d at 331-33.

*Wilford v. State*, 50 N.E.3d 371, 374-75 (Ind. 2016).

[7] The *Wilford* court went on to reiterate that "police may discharge their caretaking function whenever circumstances compel it, but also that a decision to impound must be exercised according to standard criteria and on the basis of something other than suspicion of evidence of criminal activity." *Id.* (citations and quotation marks omitted). Thus, *Fair* set forth a strict two-prong standard for establishing that the decision to impound a person's vehicle without a warrant was reasonable:

> (1) Consistent with objective standards of sound policing, an officer must believe the vehicle poses a threat of harm to the community or is itself imperiled; *and*
>
> (2) The officer's decision to impound adhered to established departmental routine or regulation.

*Id.* at 326 (citing *Fair*, 627 N.E.2d at 433).

[8] Here, Officer Majors testified that Gary's vehicle was illegally parked in a no-parking zone on a public street in a high crime area and, thus, he believed that the vehicle both posed a threat to the community and was itself imperiled. Moreover, Officer Majors stated that his decision to impound Gary's vehicle was pursuant to established IMPD routine and regulation. Specifically, according to IMPD's departmental policy, general order 7.3, if "[a]ny vehicle the operator of which is unable to move such vehicle by reason of his incapacity from injury or *arrest*," the vehicle can be considered a public nuisance and impounded. State's Ex. 1 (emphasis added). Section 2 of the

general order also states that a vehicle may be towed and impounded if parked in no parking or other special parking restrictions, being operated by a suspended driver, or owned or operated by a person under custodial arrest for any charge. *Id.* The general order further provides that in assessing whether a particular vehicle constitutes a hazard or is itself in danger, an officer should consider the degree to which the property upon which the vehicle is located is under the control of the vehicle owner/operator and the length of time the officer believes the impounded car would be left unattended. *Id.*

[9] Officer Majors testified that, following Gary's arrest, no one showed up to claim or remove the illegally parked vehicle from the public street, and that the only person to arrive was the juvenile's mother who was not the owner of the vehicle. Tr. Vol. 2 at 10. Thus, Officer Majors could reasonably infer that Gary's vehicle would be left unattended for an extended period. Under the circumstances presented, Officer Majors's decision to impound the vehicle was consistent with objective standards of sound policing and adhered to established departmental routine or regulation. Accordingly, we conclude that his decision to impound the vehicle was reasonable.

## Section 2 – The inventory search was reasonable.

[10] Having determined that Officer Majors's decision to impound the vehicle was reasonable, we next address the subsequent inventory search.

> [T]he lawful custody of an impounded vehicle does not of itself dispense with the constitutional requirement of reasonableness in regard to the searches conducted thereafter. Instead, to pass constitutional muster, the search itself must be conducted pursuant to standard police procedures. The rule that standardized criteria or established routine must exist as a precondition to a valid inventory search is designed to ensure that the inventory is not a pretext "for a general rummaging in order to discover incriminating evidence." In order to perform this function, the procedures must be rationally designed to meet the objectives that justify the search in the first place, and must sufficiently limit the discretion of the officer in the field. Searches in conformity with such regulations are reasonable under the Fourth Amendment. Thus, to defeat a charge of pretext the State must establish the existence of sufficient regulations and that the search at issue was conducted in conformity with them.

*Weathers v. State*, 61 N.E.3d 279, 286-87 (Ind. Ct. App. 2016) (quoting *Fair*, 627 N.E.2d at 435) (citations omitted).

[11]  To meet its burden, the State must present more than a mere statement from an officer that the search was performed as a routine inventory. *State v. Lucas*, 859 N.E.2d 1244, 1250 (Ind. Ct. App. 2007), *trans. denied*. "The circumstances of the intrusion must also indicate that the search was carried out under routine department procedures which are consistent with the protection of officers from potential danger and false claims of lost or stolen property as well as protection of those arrested." *Id*.

[12]  Here, Officer Lowcher testified that she performed an inventory search of Gary's vehicle at the scene and that she had been trained according to IMPD's

departmental policy regarding impounding vehicles and that she followed that policy. IMPD's general order regarding inventory searches provides that "whenever an officer takes a vehicle into custody, an inventory search will be conducted prior to impoundment." State's Ex. 1. The vehicle inventory search "will consist of searching the passenger compartment of the vehicle" and, "if a key is available, or if unlocked, the glove compartment and trunk will also be searched." *Id.* The general order further states that a "detailed listing" of any items of significant value will be made and will be listed in the "officer's personal notebook, the tow slip, or in an incident report." *Id.*

[13] Officer Lowcher stated that she found a handgun in the unlocked center console of the vehicle, a backpack containing money, and some clothing. A few other items found in the car belonged to the juvenile and were released to her at the scene prior to the impoundment. Officer Lowcher admitted that she did not make a detailed listing of the items found in the vehicle in her personal notebook, but explained that she thought that such requirement "might be part of the newer version" of the departmental policy that was not in effect at the time of the stop. Tr. Vol. 3 at 15. She also stated that she believed that Officer Majors, who was at the scene but did not actually conduct the search, had at least listed the handgun and the backpack in an incident report. The record reveals that the police report prepared by Officer Majors did list the items of value found in the vehicle that belonged to Gary. Appellant's App. at 14-15.

[14] Gary complains that Officer Lowcher failed to submit a "proper and complete inventory sheet of all property" found in the vehicle as required by the

established policies. Appellant's Br. at 7. However, we have held on more than one occasion that the mere failure to follow established police policy does not necessarily render the inventory search unreasonable. *See Weathers*, 61 N.E.3d at 288; *Whitley v. State*, 47 N.E.3d 640, 646 (Ind. Ct. App. 2015), *trans. denied* (2016). Indeed, even major deviations from established policy do not automatically require suppression if the inventory search fulfilled its administrative purposes and there are no other indications of pretext for an investigative purpose. *Sams v. State*, 71 N.E.3d 372, 378 (Ind. Ct. App. 2017) (citing *Weathers* and *Whitley*). In such cases, we look to the specific circumstances presented to determine whether the failure to follow the established police policy suggested a pretextual search. *See, e.g., Weathers*, 61 N.E.3d at 288-89; *Whitley*, 47 N.E.3d at 646.

[15] For example, in *Weathers*, after determining that it was necessary to impound the defendant's vehicle, the police officer involved asked the defendant whether there were any drugs or guns in the vehicle. 61 N.E.3d at 283. The defendant responded that there was a handgun inside the vehicle and told the officer where it was located. *Id*. The officer then looked inside the vehicle and observed the barrel of the handgun located in plain view between the driver's seat and the center console just as the defendant had indicated. *Id*. The officer proceeded to conduct a warrantless inventory search and found nothing of value in the vehicle other than the handgun and the vehicle's registration. *Id*.

[16] The defendant argued on appeal that the search was unreasonable based upon the officer's failure to follow that portion of the departmental policy requiring

him to complete a written inventory following his warrantless inventory search of a vehicle. *Id.* at 288. Under the facts presented, we disagreed. We noted that the officer's failure to complete a written inventory had no bearing on the fact that the defendant did not contest that the handgun was recovered from the vehicle and that it was recovered from the exact location where he told the officer it was located. *Id.* Thus, we were unable to see how the defendant was prejudiced by the mere lack of a written inventory. *Id.* at 289. Moreover, we were unconvinced that the officer's failure to complete a written inventory suggested that his rationale for conducting the warrantless inventory search was a pretext. *Id.* Therefore, we determined that the search was reasonable under the Fourth Amendment. *Id.*

[17] Similarly, in *Whitley*, the defendant argued that an inventory search of his truck was unreasonable under the Fourth Amendment because the officers failed to complete a written inventory of the items found during the search in their personal notebooks as was required by department policy. 47 N.E.3d at 646. We acknowledged that the circumstances of the case presented more than a minor deviation from the applicable policy, as it was apparent that one of the officers ceased inventorying the remaining contents of the truck after finding the contraband. *Id.* at 648. Nevertheless, because no evidence suggested that the officer was looking for evidence of a crime when he began searching the truck at the other officer's request, and because there was a photographic record made of the contents found in the truck, we concluded that the officers' failure to list all items found in the truck in their personal notebooks as was required by

policy, did not, in itself, render the search pretextual. *Id.* Under the circumstances, we concluded that the search was reasonable under the Fourth Amendment. *Id*.

[18] As in *Weathers* and *Whitley*, based on the facts presented, we think the inventory search of Gary's vehicle was reasonable. Specifically, we are not convinced that Officer Lowcher's failure to record all items found in her personal notebook prejudiced Gary or suggests that her rationale for completing the warrantless inventory search was pretextual. Officer Lowcher explained that she failed to list all items found in her personal notebook because she thought that she was not required to do so. She further explained that some items that were found were released to the juvenile at the scene, and that the other items of value belonging to Gary were properly listed in an incident report prepared by Officer Majors. Under the circumstances, the inventory search essentially fulfilled its administrative purpose and there are no other indications of pretext for an investigative purpose. We conclude that despite Officer Lowcher's apparent failure to strictly follow all aspects of the relevant procedure, her inventory search of the vehicle was reasonable.

[19] In sum, neither the impoundment nor the inventory search of the vehicle was unreasonable under the Fourth Amendment, and therefore the trial court did

not abuse its discretion in admitting the handgun found during the search.[4]

Gary's conviction is affirmed.

[20] Affirmed.

Baker, J., and Barnes, J., concur.

---

[4] We note that much of our caselaw regarding inventory searches somewhat conflates the federal and state constitutional analyses and thus, notwithstanding Gary's waiver of his state constitutional claim, we conclude that both the impoundment and the inventory search were also reasonable under Article 1, Section 11 of the Indiana Constitution. While Article 1, Section 11 involves independent analysis under the totality of the circumstances, *see Wilford*, 50 N.E.3d at 378, for the same reasons we outlined above, the impoundment and inventory search were reasonable under those circumstances.