## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Sep 29 2017, 6:30 am

**C L E R K**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

James R. Recker
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Larry D. Allen
Deputy Attorney General
Indianapolis, Indiana

## I N T H E
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Richard Pinkham,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | September 29, 2017<br><br>Court of Appeals Case No.<br>53A05-1608-CR-1793<br><br>Appeal from the Monroe Circuit Court<br><br>The Honorable Teresa D. Harper, Judge<br><br>Trial Court Cause No.<br>53C09-1406-FC-611 |

**Barnes, Judge.**

# Case Summary

[1] Richard Pinkham appeals his conviction for Class C felony burglary and the finding that he is an habitual offender. We affirm.

# Issue

[2] The sole issue before us is whether Pinkham has standing to challenge the constitutionality of a vehicle search that yielded incriminating evidence where the vehicle owner was present and consented to the search.

# Facts

[3] On the morning of October 7, 2013, Pinkham and Jennifer Proctor drove to a Taco Bell restaurant in Bloomington. Pinkham got out of the car, and Proctor drove to a nearby location from which she monitored police scanner activity. Proctor and Pinkham communicated via two-way radios. Pinkham, carrying a black bag, forced his way into the restaurant using a crowbar. He forcibly opened the restaurant's safe and cash register drawers and stole $1,382.

[4] The police obtained surveillance video footage that showed a figure in dark clothes and gloves moving within the restaurant, as well as a small black vehicle with a rear spoiler outside the restaurant around the time of the robbery. Indiana State Police issued a bulletin regarding the burglary details.

[5] Seven months later, in the pre-dawn hours of May 24, 2014, a burglar alarm was triggered at a Taco Bell location in Booneville. Detective Paul Kruse of the Warrick County Sheriff's Department responded to the scene and observed pry

markings consistent with use of a crowbar on the restaurant door. Detective Kruse saw a small black Mitsubishi Eclipse drive past the restaurant multiple times. Given the unusually early hour and the fact that it was Memorial Day, traffic should have been scarce. Detective Kruse became suspicious about the vehicle and its proximity to the Taco Bell. He followed the vehicle, which quickly pulled into a gas station. As Detective Kruse passed the vehicle, its driver immediately drove away from the gas station. Detective Kruse eventually resumed following the vehicle. The driver, Pinkham, committed a traffic infraction, disregarding signage instructing drivers to keep right except to pass, and Detective Kruse pulled over the vehicle. Proctor was seated in the passenger seat.

[6] Detective Kruse observed that Pinkham was visibly nervous and breathing heavily. On request, Pinkham handed over his license, proof of insurance, and a vehicle registration in Proctor's name. From his squad car, Detective Kruse checked Pinkham's driving history, as well as for outstanding warrants and criminal history. Detective Kruse then returned to the vehicle and asked Pinkham to exit. He asked Pinkham if he was armed, and Pinkham advised that he had a knife. Detective Kruse instructed Pinkham to place his hands on the trunk of the vehicle and patted Pinkham down, removing the knife.

[7] Detective Kruse asked why Pinkham was in Booneville. Pinkham responded that he had just arrived in town. Detective Kruse issued a citation, told Pinkham that he was free to go, and placed the citation and Pinkham and Proctor's records on the rear of the vehicle.

[8] Detective Kruse later testified that "[a]fter I told him that he was free to go, and it was clear he was making a move to do that, I asked him if it would be okay with him if I searched the car[.]" Tr. p. 47. Pinkham responded that he had no problem with the search but that Detective Kruse should ask the vehicle's owner, Proctor. Kruse approached Proctor and asked her reasons for being in Booneville. Her account differed from Pinkham's. Proctor, too, consented to the vehicle search.

[9] Detective Kruse's preliminary search yielded a crowbar and two-way radios. He decided to impound the vehicle and seek a search warrant. After obtaining the warrant, the police recovered from the vehicle a reciprocating saw, a small sledgehammer, another crowbar, black gloves, a black hat, a black ski mask, a camouflage-print sweatshirt, and a black bag containing pliers and extra blades for the saw.

[10] The State charged Pinkham with two counts of class C felony burglary. The State also filed a notice of intent to seek an habitual offender enhancement. On September 8, 2015, Pinkham filed a motion to suppress, which the trial court denied. The trial court ordered the burglary counts severed for trial, and on May 31-June 2, 2016, Pinkham was tried by jury regarding the Bloomington burglary.[1]

---

[1] The severed burglary count originating in Warrick County was later dismissed.

[11] Detective Kruse testified that the presence of an out-of-town vehicle, in the immediate vicinity of a Taco Bell burglary, that matched the description of the suspect vehicle involved in an unsolved, morning robbery of another Taco Bell location had made him suspicious. He testified further that his suspicions were further raised by the early hour and the furtive and evasive actions taken by Pinkham before the traffic stop.

[12] Proctor confessed and served as a primary State's witness, testifying in detail regarding Pinkham's planning and execution of the crimes. She testified further that before trial, Pinkham begged her to withdraw her confession, to refuse to testify, and to tamper with a witness.[2]

[13] Pinkham was found guilty as charged and was found to be an habitual offender. The trial court sentenced him accordingly, and he now appeals.

## Analysis

[14] Pinkham argues on appeal that the trial court should have granted his motion to suppress the evidence obtained from the vehicle.[3] The State counters that

---

[2] The record includes letters and jailhouse recordings in which Pinkham begs Proctor to dissuade her daughter, Jordan Nikki Hodges, from testifying against him. Hodges, however, testified that when she was employed at a Taco Bell location, Pinkham asked about the "safe numbers" and security system. Tr. p. 95. Hodges also testified that she saw Pinkham and Proctor with a large sum of money, which Pinkham admitted "he got … from Taco Bell." *Id.* Pinkham confessed to Hodges, admitting that he wore black clothing during the burglary and that he "cut through the safe." *Id.* at 96.

[3] Because Pinkham appeals following the conclusion of his trial, his appeal is, in fact, a request to review the trial court's decision to admit the evidence recovered from the vehicle at trial, which is governed by an "abuse of discretion" standard of review. *Carpenter v. State,* 18

Pinkham lacks standing to challenge the constitutionality of the vehicle search. We agree with the State.

[15] Although Pinkham contends that the State violated his rights under Article 1, Section 11 of the Indiana Constitution, he has failed to develop a cogent argument on this issue or to provide adequate citation to authority cite to legal authority in support of his state constitutional claims. To this extent, his claims regarding state constitutional violations are waived. *See Shane v. State,* 716 N.E.2d 391, 398 n.3 (Ind. 1999) (defendant waived argument on appeal by failing to develop a cogent argument). We will only address Pinkham's Fourth Amendment claims.

[16] To challenge the validity of a search under the Fourth Amendment, the United States Supreme Court has held that the test is whether the defendant can demonstrate a legitimate expectation of privacy in the area subject to the governmental intrusion. *Whitley v. State,* 47 N.E.3d 640, 644 (Ind. Ct. App. 2015) (citing *Minnesota v. Carter,* 525 U.S. 83, 88, 119 S. Ct. 469 (1998)). Indeed, "a defendant aggrieved by an illegal search and seizure only through the introduction of damaging evidence secured by the search of a third person's

N.E.3d 998, 1001 (Ind. 2014) (citing *Guilmette v. State,* 14 N.E.3d 38, 40 (Ind. 2014)). Because we find the issue of standing to be dispositive, we will not address the merits of his claim.

premises has not had any of his Fourth Amendment rights infringed." *Sisk v. State,* 785 N.E.2d 271, 274 (Ind. Ct. App. 2003).

[17] A driver who is not the owner of the vehicle at issue in a vehicle search by police lacks standing if the owner is also in the vehicle. *Campos v. State,* 885 N.E.2d 590, 598-99 (Ind. 2008); s*ee also United States v. Jefferson,* 925 F. 2d 1242, 1249 (10th Cir. 1991); *United States v. Lochan,* 674 F. 2d 960, 965 (1st Cir. 1982) (although driver had been on a long trip and had vehicle registration, driver lacked standing because vehicle owner was also present).

[18] Here, Proctor was in the car when Detective Kruse initiated the traffic stop; she freely and voluntarily consented to the vehicle search; and she served as a primary State's witness at trial. Under the circumstances, Pinkham's constitutional challenges to the vehicle search must fail for a lack of standing.

## Conclusion

[19] We conclude that Pinkham's claims fail for lack of standing. We affirm his conviction and habitual offender finding.

[20] Affirmed.

Baker, J., and Crone, J., concur.