## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

May 29 2019, 11:03 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Anna Onaitis Holden
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

George P. Sherman
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Carla Shaw, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff.* | May 29, 2019 <br><br> Court of Appeals Case No. 18A-CR-1975 <br><br> Appeal from the Marion Superior Court <br><br> The Honorable David Certo, Judge <br><br> The Honorable David Hooper, Magistrate <br><br> Trial Court Cause No. 49G12-1708-CM-32156 |

**Riley, Judge.**

# STATEMENT OF THE CASE

Appellant-Defendant, Carla Shaw (Shaw), appeals her conviction for possession of marijuana, a Class B misdemeanor, Ind. Code § 35-48-4-11(a)(1).

We reverse.

# ISSUE

Shaw presents one issue on appeal, which we restate as: Whether the trial court abused its discretion when it admitted evidence procured from a warrantless inventory search of her vehicle.

# FACTS AND PROCEDURAL HISTORY

On August 29, 2017, just before midnight, Officer Michael Kasper (Officer Kasper) of the Indianapolis Metropolitan Police Department (IMPD) was on patrol in the east district of Indianapolis when he observed a car driven by Shaw fail to signal a turn from Sherman Drive onto 9th Street. Officer Kasper followed the vehicle as Shaw signaled and turned left onto Bradley Street, where Officer Kasper initiated a traffic stop. Shaw drove approximately 100 feet, pulled over, and parked on the public street in what is considered by law enforcement to be a "high crime" area. (Trial Transcript Vol. II, p. 10). Officer Kasper requested back up and then approached Shaw's vehicle. Shaw provided her name and date of birth. Shaw also volunteered that she did not have a valid driver's license, a fact that Officer Kasper confirmed by checking with the Bureau of Motor Vehicle's data base. Shaw had two passengers in the vehicle, neither of whom possessed a valid driver's license.

[5] Officer Kasper decided to have Shaw's vehicle towed because there was no one present with a valid driver's license to take possession of the vehicle. Officer Kasper called for a tow truck. After Officer Katrina McEvilly (Officer McEvilly) arrived to assist, Officer Kasper removed Shaw and the two passengers from the vehicle. Officer Kasper detained Shaw but did not place her under arrest for driving without a valid license. Pursuant to the IMPD's written policy on the towing and impounding of vehicles, General Order 7.3 (GO 7.3), the vehicle was searched prior to being towed. Officer McEvilly found a bag of marijuana underneath the driver's seat within reach of the backseat passenger. Officer Kasper also searched the vehicle and found a bag of marijuana between the front seat and the center console.

[6] As the officers were finishing the inventory search, four of Shaw's family members arrived. None of them had valid driver's licenses, so the officers continued the process of preparing the vehicle to be towed. GO 7.3 provided that only items which had a value of $100 or more were to be inventoried prior to towing a vehicle. Because the only other item found in Shaw's vehicle apart from the contraband was a bag of fast food, the officers did not prepare a list of property. Eventually, Shaw's daughter arrived. Officer Kasper had discretion to decide whether to tow the vehicle, and he decided not to do so in light of Shaw's and her passengers' good behavior during the traffic stop. After verifying that she had a valid driver's license, Officer Kasper released Shaw's vehicle to Shaw's daughter. Based on the contraband found during the inventory search, Officer Kasper arrested all the occupants of the vehicle.

[7]     On August 30, 2017, the State filed an Information, charging Shaw with possession of marijuana, a Class B misdemeanor; driving while suspended, a Class A misdemeanor; and operating a motor vehicle without ever receiving a license, a Class A misdemeanor.  On January 31, 2018, Shaw filed a motion to suppress any evidence obtained from the warrantless search of her vehicle.  On March 5, 2018, the trial court held a hearing on Shaw's motion, which it denied the same day, finding that the search was a valid inventory search.[1]

[8]     On July 19, 2018, the trial court conducted Shaw's bench trial.  Shaw renewed her motion to suppress and further evidence was taken on the renewed motion.  When the trial court asked if Shaw had parked her vehicle in line with other cars parked on the street, Officer Kasper responded, "Close to.  It was at somewhat of an angle" and "[t]he front end closer to the curb than the back end."  (Trial Tr. Vol. II, p. 23).  The State had GO 7.3 admitted into evidence.  The trial court denied Shaw's renewed motion to suppress.

[9]     At the conclusion of the evidence, the trial court found Shaw guilty as charged.  Directly following Shaw's bench trial, the trial court sentenced her to 180 days for possessing marijuana, one year for driving while suspended, and one year for operating a motor vehicle without ever receiving a license.  The trial court suspended the entirety of the sentence to time served.

---

[1]  A copy of the trial court's written order denying Shaw's motion to suppress is not part of the record on appeal.

Shaw now appeals. Additional facts will be provided as necessary.

# DISCUSSION AND DECISION

Shaw challenges the admission of the evidence garnered from the inventory search as fruit of an unlawful search under the Fourth Amendment and Article I, Section 11, of our state constitution.

## I. *Standard of Review*

Trial courts have broad discretion to admit or exclude evidence. *Blount v. State*, 22 N.E.3d 559, 564 (Ind. 2014). A trial court's decision on the admissibility of evidence is reviewed for an abuse of discretion. *Sams v. State*, 71 N.E.3d 372, 376 (Ind. Ct. App. 2017). We will reverse that decision only where it is clearly against the logic and effect of the facts and the error affects the defendant's substantial rights. *Id*. When reviewing the admission at trial of evidence stemming from an inventory search, we do not reweigh evidence, and we consider conflicting evidence in the light most favorable to the trial court's ruling. *Wilford v. State*, 50 N.E.3d 371, 374 (Ind. 2016). We also consider any uncontroverted evidence favorable to the defendant. *Id*. "[T]he ultimate determination of 'reasonableness' is a constitutional legal question meriting independent consideration by this Court." *Id*.

## II. *Fourth Amendment*

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures[.]" U.S. CONST. amend IV. A search conducted without a search

warrant is *per se* unreasonable unless it fits within one of a few "specifically established and well-delineated exceptions." *Mincey v. Arizona*, 437 U.S. 385, 390 (1978). When the State seeks to admit evidence garnered from a warrantless search, it bears the burden of showing the need for an exemption from the warrant requirement and that its conduct fell within the exception. *Taylor v. State*, 842 N.E.2d 327, 330 (Ind. 2006).

[14] One well-defined exception to the warrant requirement is the inventory search. *Illinois v. Lafayette*, 462 U.S. 640, 642 (1983); *Fair v. State*, 627 N.E.2d 427, 431 (Ind. 1993). An inventory search is an exception because it serves an administrative, not an investigatory, purpose—to document the contents of a vehicle to preserve the owner's property and to protect the State against claims of stolen or lost property. *South Dakota v. Opperman*, 428 U.S. 364, 369 (1976). In order to establish the reasonableness of an inventory search, as a threshold issue the State must show the propriety of the impoundment itself because the need for the inventory arises from the impoundment. *Fair*, 627 N.E.2d at 431. If the impoundment is not specifically authorized by statute, to show that the impoundment of a vehicle was warranted, the State must demonstrate "(1) that the belief that the vehicle posed some threat or harm to the community or was itself imperiled was consistent with objective standards of sound policing, and (2) that the decision to combat that threat by impoundment was in keeping with established departmental routine or regulation." *Id.* at 433 (citations omitted). When assessing whether a vehicle posed a hazard, courts look at two main factors, namely the degree to which the property where the vehicle was located

was under the control of the defendant and the length of time the officer impounding the car perceived that the car would be unattended. *Id*. at 434. Ultimately, the inquiry is not whether impounding the vehicle was absolutely necessary; rather, courts must determine whether the decision to impound was reasonable in light of the applicable standard. *Id*. at 433.

[15] If the impoundment itself was warranted, the State must also establish that the inventory search was conducted pursuant to standard police procedures. *Sansbury v. State*, 96 N.E.3d 587, 592 (Ind. Ct. App. 2017). An inventory search cannot be a pretext for a fishing expedition for incriminating evidence. *Id*. If either the propriety of the impoundment or the scope of the inventory is unreasonable, the search will not be upheld. *Fair*, 627 N.E.2d at 431.

[16] Here, there was no evidence from which it could be inferred that Officer Kasper believed that Shaw's vehicle was parked in a manner which posed a threat to the community or which placed the vehicle itself in peril. He never testified as such; rather, Officer Kasper testified that he decided to tow Shaw's vehicle simply because there was no licensed driver available to take possession of it. The State did not attempt to show that Shaw parked her vehicle illegally, and the evidence at the suppression hearing was that, at most, the vehicle was slightly askew in relation to other parked cars on the same street. The fact that Shaw's car was not parked illegally or creating a traffic hazard militates against the reasonableness of the impound. *See Taylor*, 842 N.E.2d at 331-32 (concluding the impound was unreasonable in part because it was unclear that

vehicle was parked illegally, and, in any event, vehicle was not a potential hazard to public safety).

[17] In addition, although the car was parked in what was considered to be a high-crime area, other cars were parked on the same street that were unattended at that late hour. This was not a case where Shaw's would have been the sole vehicle in a deserted area, rendering it more of a target. Contrary to the State's assertions, unlike the circumstances in *Abran v. State*, 825 N.E.2d 384, 390 (Ind. Ct. App. 2005), *trans. denied*, where the truck at issue had items of value exposed in its bed, there was no evidence here that Shaw's car was particularly susceptible to being stolen or vandalized. At the time he made the decision to impound, Officer Kasper had also decided that he would not arrest Shaw for driving without a valid license, and so there was no reason for him to believe that her car would be left unattended for a long period of time. *See Fair*, 627 N.E.2d at 434.

[18] The State argues that it was reasonable for Officer Kasper to impound the vehicle because, if he did not, Shaw or one of the unlicensed passengers would have been likely to drive it away once the traffic stop was completed. However, before deciding to impound the vehicle, Officer Kasper verified Shaw's driving status by looking at her driver record, a copy of which was admitted at the suppression hearings. Those records indicated that Shaw's home address was only blocks away from the site of the traffic stop. The fact that Shaw lived just a few blocks away would have been known to Officer Kasper when he made his impound decision, and we find that it was unreasonable for him to assume that

Shaw would attempt to drive home instead of walking home and arranging for someone else with a valid driver's license to retrieve the vehicle. Thus, we cannot conclude that Officer Kasper's decision to impound Shaw's vehicle was reasonable because there was no evidence that Officer Kasper believed, consistent with standards of good policing, that the vehicle "posed some threat or harm to the community or was itself imperiled." *See Fair*, 627 N.E.2d at 433.

[19] We also conclude that Officer Kasper's decision to impound Shaw's vehicle was not consistent "with established departmental routine or regulation." *Id*. GO 7.3 provided guidance on towing decisions in relevant part as follows:

### I. Authority to Tow

A. Officers have the authority to tow and impound vehicles when authorized by city ordinance or state statute, or as part of the officers' community caretaking function.

B. Officers must be aware of the current on the [sic] city ordinances and state statutes that authorize the tow and impoundment of vehicles. Some applicable legal authority is provided in **Section VII.** below.

C. Community Caretaking Function

1. For a tow to be valid under this rationale, the following must be shown:

a. The vehicle poses some threat or harm to the community, or is itself in danger; and

b. Impoundment of the vehicle is in accordance with established department policy.

2. In assessing whether a particular vehicle constitutes a hazard or is itself in danger, officers should consider:

> a. The degree to which the property upon which the vehicle is situated is under the control of the vehicle owner/operator; and

> b. The length of time the officer reasonably believes the impounded car would be left unattended.

3. Not every vehicle illegally parked or left unattended can be towed under the authority of the community caretaking function; *officers must be able to particularly describe why the vehicle is a potential harm to the community or is itself in danger*.

**II. Vehicles Which May be Towed**

*Assuming proper authority exists under **Section I.** above, the* following vehicles may be towed and impounded:

* * * *

> F. Being operated by an unlicensed or suspended driver[.]

(State's Exh. 3) (emphasis added). Thus, pursuant to GO 7.3, which largely tracts the language of *Fair*, an officer could only tow a vehicle operated by an unlicensed or suspended driver if that officer could particularly describe why the vehicle is a hazard to the community or is itself in danger, which we have already concluded that Officer Kasper did not, and could not, do in this case.

[20] The inventory search conducted on Shaw's vehicle was invalid under the Fourth Amendment, and, therefore, the trial court abused its discretion when it

admitted evidence garnered from that search at trial. Because we conclude that the State did not meet its burden of proof on the threshold issue of whether Officer Kasper's decision to impound was reasonable, we need not address the validity of the scope of the search. *See Fair*, 627 N.E. at 431. In addition, having concluded that the search of Shaw's vehicle did not fall within the inventory search exception to the warrant requirement under the Fourth Amendment, we do not address Shaw's state constitutional claim. *See Berry v. State*, 967 N.E.2d 87, 92 n.3 (Ind. Ct. App. 2012) (concluding that the search of his vehicle violated the Fourth Amendment and declining to address Berry's state constitutional claim).

# CONCLUSION

Based on the foregoing, we conclude that the trial court abused its discretion when it admitted evidence that was procured from an invalid inventory search of Shaw's vehicle.

Reversed.

Bailey, J. and Pyle, J. concur